Before McLAUGHLIN, FORMAN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Appellee, alleging lawful residency in the Virgin Islands, filed suit for divorce in the United States District Court of said Islands against appellant on June 7, 1968. Appellant filed a motion in said court asking dismissal of the action on the ground that appellee did not have a bona fide domicile in the Virgin Islands. The motion was heard September 30, 1968. Appellant's sole witness as she states "was the plaintiff called as for cross-examination." On October 1, 1968, the District Court entered an order finding "as a matter of fact that the Plaintiff was, for six weeks preceding the filing of this complaint, and continues to be, a bona fide resident and domiciliary of the island of St. Thomas, the U. S. Virgin Islands." The motion was thereupon denied and appellant was ordered to file her answer or other responsive pleading within twenty days from October 1, 1968. The present appeal was taken from that order. There was a later motion dated December 3, 1968, filed on behalf of appellant on which no hearing has been had. Said motion is no part of this proceeding. What is presented on this appeal involves an interlocutory matter which is nonappealable.

The appeal will be dismissed.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

The BATON ROUGE WATERWORKS COMPANY, Respondent.

No. 27277

Summary Calendar.

United States Court of Appeals Fifth Circuit.

Oct. 17, 1969.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., John F. LeBus, Director, N.L.R.B., New Orleans, La., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Elliott Moore, Nan C. Bases, Attys., N.L.R.B., for petitioner.

William A. Norfolk, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for respondent.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

PER CURIAM:

The case is before this Court on the application of the National Labor Relations Board for enforcement of its order to bargain issued against the Baton Rouge Waterworks Company. The issue is simple: whether the Board properly held that the employees of the Parish Water Company, a newly organized, wholly owned subsidiary of Baton Rouge Waterworks, constituted an accretion to the unit of Baton Rouge's employees for which the Union was the certified bargaining representative. We hold the Board's action sustainable and enforce.[1]

In 1966 Baton Rouge Waterworks bought up several small rural water companies through the newly incorporated subsidiary, Parish Water Company. When the Union and Baton Rouge met to negotiate after the formation of Parish, the Union claimed to be the bargaining representative of Parish employees as well as of Baton Rouge employees. Following the Company's refusal to bargain with respect to the Parish employees, the Union filed a unit-clarification petition with the Board. The unit was clarified in favor of the Union, the Company again refused to bargain, the Board found § 8(a) (5) and (1) violations and ordered the Company to bargain, and now the Board seeks enforcement of that order.

In determining whether a new employee group is an accretion to an existing unit or rather should constitute a different unit, weight may be given to a variety of factors. In the instant case the two companies were engaged in identical operations in geographically contiguous areas.[2] Parish employees possess the same skills and perform the same functions under the same job classifications as do their counterparts with Baton Rouge. They receive the same wages and fringe benefits, including hospitalization, vacations, and paid holidays. The President of Parish handles the labor relations of Baton Rouge as its Vice-President and Secretary. His Executive Assistant, whose services and salary are shared equally by Baton Rouge and Parish, does the hiring for Parish. Three of Parish's directors are also on the Board of Directors of Baton Rouge. When Parish initially began its operations, it hired eight employees below the

---

1. Pursuant to Rule 18 of the Rules of this court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 408 F.2d 804, Part I.

2. In the first year of its operation, Parish even shared the same offices as Baton Rouge, renting from them. It has now moved to its own office approximately one block away.

supervisory level, five of these eight (two clerical employees and three laborers) were transferred from Baton Rouge. At the time of their transfer they were told that they were welcome to return to their old jobs with Baton Rouge if they were dissatisfied with Parish.

The NLRB points to these factors and states that "though nominally separate corporations and though physically separate operations because of the geographical areas served [urban vs. rural], 'the entire record in this case points to one crucial factor: the Employer is engaged in the same functional activity in [both] locations.' Richfield Oil Corp., 1958, 119 NLRB 1425, 1427; accord, Simmons Co., 1960, 126 NLRB 656."

This is not the whole story, of course. The Company points to other factors, or the lack of them, to argue that the Parish employees should not be included in the same unit as the Baton Rouge employees. Chief among these factors are that the two companies are distinct legal entities, they service separate, different types of areas, and their employees are seldom commingled and have not been interchanged since the first hiring by Parish of five Baton Rouge employees. It points to the fact that the Parish "shop" (the facility out of which the laborers work) is located nine miles from the Baton Rouge facility and that the clerical employees (whose offices are located closely together) work in different buildings and are not exchanged. The employees of the companies share no common services, are hired by different *individuals* (although Parish's hiring executive also works for Baton Rouge, and vice versa), and the clerical employees have their own separate immediate and second line supervision. The unskilled employees of the two companies generally do not come in contact with each other, and they do not work together on the same job or in the same geographical area.

Our role is limited in these controversies. We must keep in mind that the Board's unit determination, based on its analysis of the particular set of facts before it, "should not be set aside unless the reviewing court finds that the Board has exercised its discretion in an arbitrary or capricious manner." Spartans Industries, Inc. v. NLRB, 5 Cir., 1969, 406 F.2d 1002, 1005, 70 L.R.R.M. 2475, 2476; see International Union United Automobile, Aircraft and Agricultural Implement Workers of America v. NLRB, 7 Cir., 1956, 231 F.2d 237, 243, cert. denied, 1956, 352 U.S. 908, 77 S.Ct. 146, 1 L.Ed.2d 117. See also Packard Motor Car Co. v. NLRB, 1947, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040.

We do not think it arbitrary since Baton Rouge's and Parish's policies—in the labor arena as well as in the business arena—are determined by the same people at the top and come out with the same results at the bottom. In the end Parish employees receive the same wages and fringe benefits, including hospitalization, vacations, and paid holidays as the Baton Rouge employees. Considering the genesis of Parish and the interchange of personnel and these other factors from the standpoint of the employees of the two companies, they are working for the same person, and the fact that the two companies are different legal entities is not controlling.

In the light of these facts, this Court cannot say that the Board has abused its discretion and arbitrarily determined that the Parish and Baton Rouge employees should be included in the same unit. The order of the Board to bargain and to pay to the Union dues that should have been checked off is

Enforced.