NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DMR CORP. and Harrill Electric
Contractors, Inc., Respondents.

No. 82–4094.

United States Court of Appeals,
Fifth Circuit.

March 11, 1983.

Rehearing and Rehearing En Banc
Denied May 11, 1983.

Elliott Moore, Deputy Associate Gen. Counsel, William R. Stewart, N.L.R.B., Washington, D.C., for petitioner.

Gardere & Wynne, Ronald M. Gaswirth, Laura M. Franze, Dallas, Tex., for respondents.

Before BROWN, GEE and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case is before us on the application of the National Labor Relations Board for enforcement of its order entered against Harrill Electrical Contractors, Inc. (Harrill) and DMR Corporation (DMR). The Board found that Harrill and DMR, as a single employer, violated Section 8(a)(1) and (5) of the National Labor Relations Act (Act), 29 U.S.C. §§ 158(a)(1) and (5), by failing to apply the terms of Harrill's collective bargaining agreements with Locals 59 and 116 of the International Brotherhood of Electrical Workers to electricians who were employed by DMR, and by failing to recognize Locals 59 and 116 as the bargaining representative of those employees.

The Board's order requires Harrill and DMR to cease and desist from the unfair labor practices so found, and in any other manner interfering with employees in the exercise of their rights under the Act. Affirmatively, the Board's order requires Harrill and DMR to make DMR employees whole for any losses they may have suffered by reason of their failure to honor the collective bargaining agreements with Locals 59 and 116 and to recognize and bargain with Locals 59 and 116 as the collective bargaining representative of their electricians. The Board's Decision and Order is reported at 258 N.L.R.B. No. 139 (1981).

Finding that there is insufficient evidence in the record to allow this court to decide whether the Board erred in finding that a bargaining unit of electricians employed by Harrill and DMR is an appropriate bargaining unit, we remand this case to the Board for further proceedings.

I.

Harrill is a Texas corporation with its principal place of business in Mesquite, Texas. It is engaged in business as an electrical contractor. Harrill was formed in 1975, first as a proprietorship owned and managed by Randy Harrill. Since early 1977, it has existed as a corporation with Randy Harrill as president, board chairman, manager and principal stockholder, owning a seventy-five percent interest in the company.

At all relevant times, Harrill has been party with Locals 59 and 116 to "letters of assent" binding it to the master labor agreements between those locals and cer-

tain chapters of the National Electrical Contractors Association (NECA). As concerns those electricians in its employ, Harrill has complied with its contractual obligations.

During the second half of 1978, Harrill all but ceased submitting bids on projects in the Dallas-Fort Worth area. It terminated all of its Fort Worth based electricians in November 1978 and the last of its Dallas based electricians in May 1979. Shortly before the administrative hearing in this case, however, Harrill did acquire and begin work on some new projects.

DMR was formed and incorporated in 1978. Its principal place of business is located in Dallas, Texas, and is about a fifteen to twenty minute drive from Harrill's Mesquite location. DMR was formed by Randy Harrill and two other individuals with Randy Harrill as principal stockholder owning an eighty percent interest in the company. In 1979, Anita Harrill, Randy Harrill's wife, was made president of DMR. Randy Harrill transferred, without cost, most of his DMR shares to her, making her DMR's principal stockholder owning a sixty-five percent interest in the company. He retained ownership of a fifteen percent interest in DMR.

As president of DMR, Anita Harrill was paid sixty dollars per week. She continued to perform the clerical tasks she had performed for Harrill. It appears that she had little to do with setting and implementing labor relations policies.

DMR is also an electrical contractor. In addition to Anita Harrill, its management consists of several individuals who had formerly worked for Harrill in much the same roles. Its financing, in the early months of its operation was primarily provided by loans from Harrill or from personal loans from Randy or Anita Harrill. DMR used trucks, tools and material that once belonged to Harrill. DMR purchased material from Harrill in transactions arranged by Randy Harrill, which may be characterized as less than "arms-length".

Randy Harrill played an important part in hiring several employees for DMR, all of whom had previously worked for Harrill. On one occasion, he also reassigned one of DMR's employees to another DMR job.

DMR, during the relevant time period, worked on several electrical projects on which the general contractor was a construction company for whom Harrill had previously performed work. DMR also acquired an electrical service contract for two facilities whose electrical service work had previously been done by Harrill.

DMR operated as a non-union employer, and as such it did not apply the terms of the collective bargaining agreement between Harrill and Locals 59 and 116 to its electricians. Neither did it bargain with the locals over the terms and conditions of employment of its electricians.

## II.

The locals filed an unfair labor practice charge against DMR and Harrill which alleged violations of Section 8(a)(1) and (5) of the Act. In its Decision and Order, the Board found, that Harrill and DMR constitute a single employer, that an employer-wide unit of their combined electricians is the appropriate unit, and that Harrill and DMR had violated Section 8(a)(5) and (1) of the Act by refusing to bargain with the Locals as the representative of DMR's electricians and by failing to apply the terms and conditions of the collective bargaining agreement to those employees.

Harrill and DMR attack the Board's order on two grounds. First, they argue that the single employer finding has no basis in law or fact. Secondly, they contend that the electricians employed by Harrill and DMR do not constitute the appropriate bargaining unit.

## III.

■ It is settled that the Board may treat two or more distinct business entities as a "single employer" for purposes of the Act. In such cases, the criteria to which the Board looks in determining single employer status are (1) interrelation of operations, (2) common management, (3) central-

ized control of labor relations, and (4) common ownership. However, no one of these factors is controlling, nor need all criteria be present. Single employer status ultimately depends on "all the circumstances of the case" and is characterized as an absence of an "arm's length relationship found among unintegrated companies." *Local 627, International Union of Operating Engineers v. NLRB,* 518 F.2d 1040, 1045–46 (D.C.Cir.1975), aff'd on this issue sub nom. *South Prairie Construction Co. v. Local 627, International Union of Operating Engineers,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976).

■ Such a determination is primarily factual, and should be sustained if it "has 'warrant in the record' and a reasonable basis in the law." *NLRB v. Hearst Publications,* 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944). Our examination of the record convinces us that the Board's determination meets this test.

■ From the record facts recited earlier in this opinion, it is clear that there was an interrelationship of operations between DMR and Harrill. Additionally, there is substantial evidence of common management and ownership of Harrill and DMR. Finally, there also exists substantial record evidence that, at least in the early stages of DMR's formation, there was centralized control over the labor relations of Harrill and DMR.

The evidence, therefore, considered as a whole, amply demonstrates that the Board's finding that Harrill and DMR constituted a single employer "has 'warrant in the record' and a reasonable basis in the law." Id.

### IV.

■ It is well settled that a finding that two businesses are a single employer for purposes of the Act is not determinative as to whether both are bound by a union contract signed by one of them. To bind both

to the union contract requires the additional finding that the employees of each constitute a single appropriate bargaining unit. *South Prairie Construction Co. v. Local 627, International Union of Operating Engineers,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976); *Florida Marble Polishers and Welfare Trust Fund v. Green,* 653 F.2d 972, 975 (5th Cir.1981).

■ Section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b), confers broad authority and discretion upon the Board to determine appropriate bargaining units.[1] Our power of review is quite limited. We are not to overturn the Board's decision unless it is "arbitrary and capricious." *Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947); *NLRB v. Purnell's Pride, Inc.,* 609 F.2d 1153, 1155 (5th Cir.1980); *NLRB v. J.C. Penney Co.,* 559 F.2d 373, 375 (5th Cir.1977).

In determining the appropriateness of a bargaining unit, we are concerned with the community of interests of the employees involved. *Peter Kiewit Sons' Co.,* 231 N.L.R.B. 76, 77 (1977). Whether employees have a community of interests is determined by looking at such factors as: similarity in the scale and manner of determining earnings; similarity in employment benefits, hours of work and other terms and conditions of employment; similarity in the kind of work performed; similarity in the qualifications, skills and training of employees; frequency of contact or interchange among employees; geographic proximity; continuity or integration of production processes; common supervision and determination of labor-relations policy; relationship to the administrative organization of the employer; history of collective bargaining; desires of the affected employees; and extent of union organization. R. Gorman, Labor Law: Unionization and Collective Bargaining 69 (1976). *NLRB v. Purnell's Pride, Inc., supra.*

---

1. Section 9(b) of the Act provides:

The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed

by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

The most reliable indicium of common interests among employees is similarity of their work, skills, qualifications, duties and working conditions. See *Allied Chemical Alkali Workers of America, Local Union 1 v. Pittsburgh Plate Glass Co. v. NLRB,* 404 U.S. 157, 172, 92 S.Ct. 383, 393, 30 L.Ed.2d 341 (1971). Two other reliable indicia of common interest are centralized local control on a day-to-day basis of those labor policies which most immediately affect the interest of the employees involved and common supervision. It is these indicia which ultimately determine whether an employer-wide unit of Harrill and DMR electricians is the appropriate bargaining unit or whether DMR's electricians constitute an appropriate bargaining unit separate from Harrill's employees. *Peter Kiewit Sons' Co., supra.*

■ In the record there is little, if any, evidence concerning the work, skills, qualifications, duties and working conditions of the Harrill and DMR electricians. Of course, we know that they both employ electricians, but beyond that the record is almost bare. Some evidence was introduced which would tend to show that DMR's work is largely confined to industrial electrical projects while Harrill became a residential electrical company. In any event, we have no way of knowing if the electricians performed similar work under similar conditions and we cannot assume that they did simply from the fact that they were electricians nor from the fact that both Harrill and DMR on occasion performed work for the same general contractor.[2]

2. We recognize that the fact that though there may be a difference between the work, skills, qualifications, duties and working conditions of Harrill and DMR electricians, this still may not preclude a finding that the employer-wide unit is the appropriate unit. The issue is whether the difference is so great as to indicate that DMR's employees constitute an appropriate unit separate from Harrill's employees. *Peter Kiewit Sons' Co., supra.*

3. The following transcript excerpt seems to sum up the confusion that existed on the lack of evidence on the unit question:

The fact that DMR's status as a non-union contractor was determined by Randy Harrill constitutes a "very substantial qualitative degree of centralized control of labor relations." *Local 627, International Union of Operating Engineers v. NLRB, supra.* However, as the Board has held, more important to the issue of whether DMR's electricians constitute an appropriate bargaining unit separate from Harrill's electricians, is whether there is local control over the DMR's day-to-day operations and whether there is separate supervision of DMR's electricians. *Peter Kiewit Sons' Co., supra* at 77.

It appears from the record that all the evidence concerning Randy Harrill's control over DMR's day-to-day operations and the common supervision of DMR and Harrill employees related to the initial period of DMR's operations. After that, there may have been a change regarding control and supervision. There is simply too little, if any evidence on these important subjects for us to determine whether the Board's findings on the appropriateness of the unit are or are not arbitrary.

From our reading, the failure to place evidence in the record concerning the appropriateness of the unit seems to have resulted from an erroneous impression on the part of counsel for the General Counsel that all he need do is establish that DMR and Harrill were the same employer. Once this was established, he apparently believed that the contract between Harrill and Locals 59 and 116 would be applicable to DMR's electricians.[3] As noted above, this is not correct.

MR. ALDEN: Your Honor, our position is that a unit is what is contractility [sic] agreed to and that is something that is appropriate. And from our theory that these are joint employees, the DMR and Harrill Electrical are joint employees, I think the evidence in the record is that it is the same kind of work that is being performed by the same type of employees. We will rest on that.
JUDGE BOYCE: Well,—
MR. ALDEN: Because of the theory—if we had not shown that there is a joint employee relationship in there then it really doesn't matter whether Paragraph 10 [allegation that

We are left with a record which is undeveloped on the crucial issue of unit appropriateness. Consequently we are not provided with sufficient facts to make a determination of whether the Board's finding is arbitrary or not.

For the aforestated reasons, this case is remanded to the Board for the limited purpose of a new hearing, and new findings and conclusions on the sole issue of the appropriateness *vel non,* of the single bargaining unit of Harrill's and DMR's electricians.

REMANDED.

DMR and Harrill electricians constitute an appropriate unit] stands up or not.

JUDGE BOYCE: Well, there has not been any evidence that was exclusively addressed to the unit question. We didn't get into that, except kind of generally into job descriptions and that kind of stuff. And think the record probably suffices, but I was trying to make it easier on myself, if I could.