**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MAGNA CORPORATION, Respondent.**

No. 83–4195
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 22, 1984.

Elliott Moore and Susan Tepper Papadopoulos, Deputy Associate Gen. Counsel, N.L.R.B., for petitioner.

Bruce Fickman and Chris Dixie, Houston, Tex., for intervenor.

Fulbright & Jaworski, A. Martin Wickliff, Jr., Houston, Tex., for respondent.

Louis V. Baldovin, Jr., Director, Reg. 23, N.L.R.B., Houston, Tex., for other interested parties.

Before BROWN, HIGGINBOTHAM and DAVIS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this case, the National Labor Relations Board (NLRB) seeks enforcement of its order of September 16, 1982, compelling respondent Magna Corporation (Magna) to bargain with the Oil, Chemical and Atomic Workers Local Union 4–367, AFL–CIO (the Union) regarding the new position of plant storeroom specialist. Magna has refused to bargain collectively with the Union in order to test the Board's clarification of the existing bargaining unit to include the position. For the reasons that follow, we find that the Board abused its discretion when it failed to follow its own precedent in analyzing whether the changed position should be added to the bargaining unit. On this basis, we decline to enforce the Board's order. We affirm, however, the Board's determinations that the situation presented a unit clarification question and that deferral to the arbitrator's decision was not required in this case.

*Facts and Proceedings Below*

On September 2, 1977, the Union was certified by the NLRB as the exclusive bargaining representative of certain of Magna's employees. The bargaining unit was defined as:

INCLUDED: all production and maintenance employees, quality control employees and plant clerical employees and shipping clerks.

EXCLUDED: all other employees, including office clerical employees, professional employees, safety coordinator, production coordinator, guards, watchmen and supervisors within the meaning of the Act.

Subsequent to this certification, Magna and the Union executed a collective bargaining agreement that incorporated the bargaining unit defined above and was to be effective for two years beginning January 8, 1980. In November, 1980, Magna created a new position known as "Plant Storeroom Specialist," which was occupied by a non-bargaining unit employee. On January 15, 1981, the Union filed a grievance seeking to include the new position

within the bargaining unit as a plant clerical position.

Pursuant to the grievance [1] and arbitration [2] procedures contained in the parties' written agreement, the Union submitted the grievance to arbitration. The arbitrator found that the plant storeroom specialist did not share a "community of interest" with bargaining unit employees and that the duties required by the position could not be considered bargaining unit work. The arbitrator therefore denied the Union's grievance. On September 18, 1981, the Union filed a unit clarification petition with the NLRB, again seeking inclusion of the plant storeroom specialist within the bargaining unit. The Regional Director of the NLRB held a formal hearing and on November 2, 1981, dismissed the petition, thereby affirming the result of the arbitrator's decision. [3]

On review, the Board reversed the Regional Director's decision, clarified the bargaining unit to include the plant storeroom specialist, and directed Magna to bargain with the Union as the exclusive representative for that job classification. In reviewing the Regional Director's decision, the Board specifically rejected the community of interest analysis applied by the Regional Director. The Board concluded that although the job classification at issue had "subsumed" the previous part-time receiver/stocker position, the previously-existing job had undergone a substantial change since it became a permanent position. The Board therefore concluded that the job classification at issue clearly presented a unit clarification question.

■ To obtain judicial review of the unit clarification proceeding, Magna has refused to bargain with the Union regarding the plant storeroom position. [4] In response, the Union filed the unfair labor practice charge that is the subject of this appeal on April 22, 1982. [5] Finding that no material issues of fact remained following the representation proceeding, the Board granted summary judgment for the Union, holding that Magna's refusal to bargain violated § 8(a)(5) and (1) of the National Labor Relations Act. The case is now before this Court on the NLRB's application for enforcement of its order.

*The Plant Storeroom Specialist Position*

In November, 1980, the new "plant storeroom specialist," Charles Carney, replaced a part-time employee who had been classi-

1. Article VII of the parties' contract provides:
   Section 1: For the purposes of this Agreement, the term "grievance" means a dispute between the Company and the Union, or between the Company and any employee or groups of employees, ... as to the interpretation of any express provision of this Agreement, or any question of fact arising out of any alleged violation of an express provision of this Agreement, or any dispute which may arise between the parties, which is not otherwise excluded from this grievance procedure.
   The succeeding sections of Article VII describe the grievance procedure in detail and give the Union the right to decide between arbitration or other means of redress.

2. Article VII, Section 6, provides:
   ... the findings of the arbitrator shall be binding and final on the Company, the Union, and the grievant.

3. The Regional Director found that the plant storeroom specialist does not share a community of interest with bargaining unit employees and that it required minimal contact with bargaining unit employees. Moreover, the storeroom specialist worked different hours, received different benefits, was paid differently, worked under different supervision, and worked in a separate location from those in the bargaining unit. The Regional Director further ruled that the plant storeroom specialist was *not* a newly created position and that there was no basis for concluding that the position had undergone such change as to be tantamount to a new classification warranting a unit clarification procedure.

4. Direct review of unit clarification determinations is unavailable. The employer must refuse to bargain and then raise the issue in a subsequent unfair labor practice proceeding. *Pacific Southwest Airlines v. NLRB,* 587 F.2d 1032, 1035 n. 3 (9th Cir.1978) *citing NLRB v. Ideal Laundry & Dry Cleaning Co.,* 330 F.2d 712 (10th Cir. 1964).

5. The complaint alleged that Magna had violated § 8(a)(5) and (1) of the National Labor Relations Act (29 U.S.C. §§ 158(a)(5) and (1)) by refusing to bargain collectively with the Union as the exclusive bargaining representative of an appropriate unit of Magna's employees.

fied as receiver/stocker. The part-time employee had never been included in the bargaining unit. A grievance filed in 1979 sought inclusion of the position within the bargaining unit, but was settled by the parties' agreement that the position would be classified when and if it became full-time.[6]

The majority of Carney's duties are performed in the plant storeroom, a building that is separate from the work area of bargaining unit employees. The plant storeroom houses inventory of all types of equipment, parts, and supplies. Carney performs an array of duties ranging from preparing and maintaining an inventory control system to inspecting and recharging fire extinguishers. Some of Carney's duties take him out into areas of the plant where bargaining unit employees work, and occasionally bargaining unit employees come into the plant storeroom to obtain needed supplies. However, Carney is under the supervision of the Chief Engineer, while bargaining unit employees are supervised by the maintenance supervisor. Carney's primary contact with Magna employees is with management, supervision and foremen. Only about 25% of Carney's time is spent performing inventory and receiving/stocking duties, the function of the part-time employee he replaced. Carney most frequently works without supervision, with his superiors merely signing orders based on his recommendations.

Furthermore, Carney's working hours, wages, and benefits are substantially different from those of the bargaining unit employees. Carney works a five-day week on no particular shift, is paid a salary, and the benefits he receives are not tied to seniority. No other employee replaces him when he is not at work. Bargaining unit employees work one of three eight hour shifts per day, are paid by the hour, and receive benefits proportionate to their seniority. Finally, Carney's job does not require the same training and skills required of bargaining unit employees. These facts are essentially undisputed.

## Issues

The issues presented by this appeal are threefold: (1) whether this was a proper case for unit clarification, (2) if so, whether the NLRB's failure to apply the "community of interest" standard in adding the position to the existing bargaining unit was proper, and (3) if the community of interest standard was the proper focus, whether the Board should have deferred to the arbitrator's decision.

## Unit Clarification

■ Magna's first contention on appeal is that a unit clarification proceeding was improper in this case. A petition for unit clarification is inappropriate during the term of an existing union contract where the classification at issue has been "historically excluded" from the bargaining unit. *Boston Cutting Die Co.*, 258 NLRB 771, 772 (1981). Thus, Magna argues that the plant storeroom specialist classification is merely an expansion of the preexisting stocker/receiver classification that was never included within the bargaining unit. Magna therefore contends that because the position was "historically excluded" from the unit, the unit clarification proceeding was improper and Magna's refusal to bargain was not an unfair labor practice.

The Board responds that the plant storeroom specialist position has "subsumed" the former receiver/stocker classification. That classification was the subject of a grievance filed in 1979 which was settled by the parties' agreement that the position would be added to the bargaining unit as a "plant clerical" position if and when it became full time. The position, as it formerly existed, was therefore not "historically excluded" from the bargaining unit. Furthermore, the Board argues that the position has undergone such a substantial change since Carney assumed it that a cla-

---

**6.** Neither party argues that the settlement of that grievance should be dispositive of the outcome of the present dispute, either on a contract theory or on the basis of collateral estoppel. We therefore need not, and specifically do not, decide these issues.

rification question was presented. We agree.

■ The NLRB has squarely defined the function of a unit clarification proceeding as follows:

[U]nit clarification is not appropriate for upsetting an agreement or established practice of a union and employer with respect to the unit placement of employees. Rather, unit clarification is appropriate, *inter alia,* for resolving disputes concerning the unit placement of employees who, for example, come within newly established job classifications or whose duties and responsibilities have undergone recent substantial changes which create real doubt as to whether their positions continue to fall in the category—excluded or included—that they occupied in the past.

Massachusetts Teachers Association, 236 NLRB 1427, 1429 (1978). *See also* Union Electric Co., 217 NLRB 666 (1975). Factual determinations by the NLRB such as whether a unit clarification question is "squarely presented" due to substantial change in a job classification should be sustained if they have " 'warrant in the record' and a reasonable basis in the law." *NLRB v. DMR Corp.,* 699 F.2d 788 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983), *quoting NLRB v. Hearst Publications,* 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170, 1185 (1944). *See also NLRB v. South Central Bell Telephone Co.,* 688 F.2d 345, 351 (5th Cir.1982), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983).

■ Carney's position no longer is that of a simple receiver/stocker—rather, it has taken on many additional responsibilities. Carney constantly monitors inventory levels and is responsible to see that they are maintained. He regularly performs safety and maintenance checks on plant equipment. He makes recommendations regarding the updating and replacement of plant equipment. He developed the present inventory control procedures, and, at the time of the Board's findings, was engaged in implementing a new system of computerized inventory control at the plant. All of these additional responsibilities indicate that Carney's job has undergone a substantial change. We find this change procedurally dispositive for purposes of affirming the Board's finding that unit clarification was appropriate, and turn to the substantive portion of the Board's order.

### Community of Interest Standard

■ We recognize at the outset that the Board has broad discretion in resolving unit clarification questions. *Boire v. International Brotherhood of Teamsters,* 479 F.2d 778 (5th Cir.1973). We reverse only when we find the Board's resolution of the issue to have been "arbitrary and capricious." *NLRB v. Baton Rouge Waterworks Co.,* 417 F.2d 1065, 1067 (5th Cir. 1969). Nonetheless, we have refused to enforce Board orders where they have no " 'reasonable basis in law,' either because the proper legal standard was not applied or because the Board applied the correct standard but failed to afford the plain language of the standard its ordinary meaning." *NLRB v. South Central Bell Telephone Co., supra,* 688 F.2d at 351.

■ For reasons we are unable to ascertain, in the present case the Board deviated from its established practice in unit clarification proceedings when it failed to apply the "community of interest" standard.

Whether employees have a community of interests is determined by looking at such factors as: similarity in the scale and manner of determining earnings; similarity in employment benefits, hours of work and other terms and conditions of employment; similarity in the kind of work performed; similarity in the qualifications, skills and training of employees; frequency of contact or interchange among employees; geographic proximity; continuity or integration of production processes; common supervision and determination of labor-relations policy; relationship to the administrative organization of the employer; history of collective bargaining; desires of the affected

employees; and extent of union organization.

*NLRB v. DMR Corp., supra,* 699 F.2d at 791, *citing* R. Gorman, *Labor Law: Unionization and Collective Bargaining* 69 (1976). The Board and the Courts have consistently applied this standard in evaluating "substantially changed" job classifications during unit clarification proceedings.[7]

For example, in Weatherite Co., Inc., 261 NLRB 667 (1982), Weatherite's contract with the Union defined the bargaining unit as all "employees engaged in the installation of roofing materials other than sheet metal." *Id.* Subsequent to the agreement, Weatherite commenced a polyurethane foam roofing operation in addition to its traditional operation and hired nonunion personnel. The Board found that "the urethane foam roofers [did] not share sufficient community of interest with the other roofers" so as to justify their inclusion within the existing bargaining unit. *Id.* Similarly, in 20th Century Fox Film Corp., 234 NLRB 172 (1978), the Union sought to include newly hired paralegals in the previously defined office clerical bargaining unit. Before the paralegals were hired, the Company's legal secretaries had performed at least a portion of the new paralegals' tasks, particularly filling in the blanks on form contracts. The Board held that the paralegals did not share a community of interest with the office clerical unit. *Id.* at 173. Finally, in National Blank Book Co., Inc., 246 NLRB 921 (1979), the Board applied the community of interest test to determine which of two preexisting bargaining units a unit employee assigned to oper-

ate a new type of machine should be assigned. *Id.*

Each of these cases, like the one before us today, involves the performance of substantially changed but partially preexisting duties by new (or in the case of *Blank Book,* former bargaining unit) employees. In each case, the Board focused on the community of interests between the bargaining unit employees and the substantially changed job classification that the Union sought to include. Thus, the Board's "primary concern in resolving unit issues [is] 'to group together only employees who have substantial mutual interests in wages, hours, and other conditions of employment.'" *Allied Chemical & Alkali Workers of America, Local No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 172, 92 S.Ct. 383, 394, 30 L.Ed.2d 341, 354 (1971). Application of the community of interest standard serves to "assure the coherence among employees necessary for efficient collective bargaining" and at the same time prevents the possibility of submerging minority interests in overly inclusive bargaining units. *Id.* at 172–73, 92 S.Ct. at 394.

We cannot find that these concerns were sufficiently addressed by the Board's focus on "whether the functions Carney performs are plant clerical in nature." We hasten to point out that we do not question the inclusion of plant clericals within the bargaining unit. However, by focusing only upon whether Carney's duties are plant clerical in nature, the Board short-circuited the intent behind the community of interest standard. It assumed without determining that the factors other than similarity of duties would weigh in favor of a finding that Carney and the unit employees

---

7. We do not agree with the NLRB's contention that the community of interest standard is inapplicable in unit clarification proceedings involving substantially changed job classifications. As Gorman states:

The Board considers [the community of interest] factors in all of the several different procedural settings in which a unit-determination issue presents itself: (a) *initial organization,* when there is no history of collective bargaining; (b) *severance,* when there is an existing unit—either by informal recognition or certification—and a group of employees wish to

split off from the larger group and to bargain separately; (c) *accretion,* the opposite of severance, when there is an existing unit and through merger or other acquisition a group of employees (whether organized or not) is absorbed into the existing business enterprise; and (d) *unit clarification,* when the creation of a new job or the change in description of an existing job (and accretion as well) creates uncertainty as to the inclusion of those jobs in or their exclusion from an existing unit. *Gorman* at 70.

shared a community of interest. Earlier in this opinion, we agreed with the Board's finding that Carney's position had changed substantially since he replaced the part-time employee. The position has also changed substantially since plant clericals were found to share such a community of interest with production and maintenance employees that they should be included within the same bargaining unit. By focusing merely upon whether Carney is a plant clerical, the Board attempted to extrapolate from an earlier community of interest finding the conclusion that a new or substantially changed position would share that same community of interest.

We are unconvinced by the NLRB's argument that the Board's limited focus constituted a "more particularized form of community of interest analysis that gives appropriate weight to the fact that the certified bargaining unit includes all plant clerical as well as all production and maintenance employees." Such an inquiry focuses upon only one of the several community of interest factors that we have outlined *supra*. We find that the Board's failure to consider the nature of Carney's position in view of those other factors was an abuse of discretion. We therefore decline to enforce the Board's order and remand for consideration of all the applicable community of interest factors.[8] In so doing, we express no opinion as to whether the undisputed facts regarding Carney's position compel a conclusion different from that already reached.

### Deference to Arbitration Award

■ Finally, we turn to Magna's contention that the Board abused its discretion in refusing to defer to the arbitrator's decision. We held in *NLRB v. South Central Bell Telephone Co., supra,* 688 F.2d at 350, that we felt it our duty to ensure Board compliance with arbitration awards where " 'the proceedings appear to have been fair and regular, all parties had

agreed to be bound, and the decision of the arbitration panel is not clearly repugnant to the purposes and policies of the Act.' " *Id., quoting* Spielberg Manufacturing Co., 112 NLRB 1080, 1082 (1955).

We need not determine whether the *Spielberg* factors are present in this case, however, because we also recognize that "the Board has narrowed considerably the universe of arbitration awards that will be deferred to when unit determinations are at issue." *Boire v. International Brotherhood of Teamsters, supra,* 479 F.2d at 794–95. Indeed, since *Spielberg* the Board has specifically refused to defer to arbitration decisions in unit clarification proceedings on at least four occasions.

In Marion Power Shovel Company, Inc., 230 NLRB 576, 577–78 (1977), the Board stated: "the determination of questions of representation, accretion, and appropriate unit do not depend upon contract interpretation but involve the application of statutory policy, standards, and criteria. These are matters for decision of the Board rather than an arbitrator." *Id.* Similarly, in Mercury Marine Div. of Brunswick Corp., 254 NLRB 1120 (1981), the Board refused to adopt the reasoning of the arbitrator, holding that

a unit clarification petition is an appropriate proceeding for resolving ambiguities concerning the unit placement of individuals who, for example, come within a newly established classification of disputed unit placement. In any event, the Board has held that issues involving appropriateness of unit and criteria are particularly within the Board's expertise.

*Id.* at 1121. *See also* Massachusetts Electric Co., 248 NLRB 155, 156–57 (1980); Williams Transportation Co., 233 NLRB 837, 838 (1977). Finally, in view of the wide discretion afforded the Board in unit clarification matters, *see* discussion *supra*, we cannot find that discretion was abused by

---

**8.** "A remand is particularly appropriate when the Board's order appears to conflict with its past decisions and no satisfactory explanation is provided." *NLRB v. Haberman Constr. Co.,* 618

F.2d 288, 318 (5th Cir.1980) (Randall, J., dissenting), *modified,* 641 F.2d 351 (5th Cir.1981) (*en banc* ).

the Board's refusal to defer to the arbitrator's decision in the instant case.

### Conclusion

Because we find that the Board abused its discretion in failing to apply the community of interest standard before clarifying the bargaining unit to include the plant storeroom specialist, we decline to enforce that portion of its Order. We find the remainder of the Board's Order to be correct.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.