**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-2301**

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

FAIRMONT GENERAL HOSPITAL, INCORPORATED,

Respondent.

On Application for Enforcement of an Order of the National Labor
Relations Board.  (6-CA-35297)

Argued:  December 4, 2007            Decided:  January 24, 2008

Before WILLIAMS, Chief Judge, and WILKINSON and MICHAEL, Circuit
Judges.

Petition for enforcement of order granted by unpublished per curiam
opinion.

**ARGUED:** Martin J. Saunders, JACKSON & LEWIS, L.L.P., Pittsburgh,
Pennsylvania, for Respondent.  Kellie J. Isbell, NATIONAL LABOR
RELATIONS BOARD, Washington, D.C., for Petitioner.  **ON BRIEF:**
Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy
General Counsel, John H. Ferguson, Associate General Counsel,
Aileen A. Armstrong, Deputy Associate General Counsel, Fred B.
Jacob, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD,
Washington, D.C., for Petitioner.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The National Labor Relations Board (NLRB or the Board) petitions for enforcement of its order entered against Fairmont General Hospital (Fairmont General or the hospital) in an unfair labor practice case. In this court Fairmont General challenges the Board's unit clarification decision that included two newly created occupational medicine assistant (OMA) positions in the bargaining unit for non-professional employees of the hospital. Fairmont General argues that (1) the union's petition for unit clarification should not have been entertained because the OMA positions had been historically excluded from the bargaining unit; and (2) even if the petition was properly considered, the Board applied the incorrect analysis and reached a result that the evidence does not support. We conclude that the petition was properly entertained, that the Board applied the correct analysis in deciding the petition, and that the Board's conclusions are supported by substantial evidence. Accordingly, we grant the Board's petition for enforcement.

I.

A.

Fairmont General is an acute care community hospital located in Fairmont, West Virginia. Two-thirds of the hospital's seven hundred employees are unionized. Technical employees such as nurses are represented by District 1199 of the Service Employees'

2

International Union (SEIU), while "nonprofessional employees" are represented by the Retail, Wholesale, and Department Store Union Council, Local 550, United Food and Commercial Workers International Union (the Union). J.A. 308. The Union contract covers:

> All the part-time and full-time nonprofessional employees in the following Hospital departments: Nutrition Services, Engineering, Laundry, Guest Services, X-Ray, Clinical Laboratory, Medical Records, Central Supply, and Patient Services. There is excepted from the above departments all clerical and administrative employees, other than ward secretaries, and all clerical employees (except in the Medical Records department); all department heads and their assistants; student employees; and supervisors.

> The term, "nonprofessional employees," is intended to exclude those whose occupations require a course of study or an extensive technical training course or apprenticeship, such as laboratory technicians, registered or licensed practical nurses, or dietitians.

J.A. 308.

The Union represents approximately 180 Fairmont General employees. Bargaining unit positions include laboratory secretaries, certified nurse's aides, operating room technicians, and emergency room medical assistants. Many covered employees perform both clerical tasks (such as answering phones and scheduling appointments) and clinical duties (such as blood sugar testing, drug screening, and assisting with physicals). Bargaining unit positions do not require extensive training, although some require limited certifications.

3

In 1991 Fairmont General started providing occupational medicine services. The occupational medicine program (OM) was originally located in the main hospital facility and staffed by medical technologists. OM grew as employers began requesting more health services for their employees. In 1998 Fairmont General responded to OM's growth by employing a licensed practical nurse (LPN), Cindy Ralphsnyder, and a laboratory secretary, Janice Divin, to work in OM. The lab secretary was represented by the Union, while the LPN and the medical technologists were represented by SEIU.

In 1999 Brian Pulice was engaged as an independent contractor to direct and market OM's services, and the program "grew astronomically." J.A. 101. In response to the program's growth, Ralphsnyder and Diven moved in 2000 to an offsite location five miles from the main hospital facility. When Ralphsnyder left OM two years later, Fairmont General did not hire another LPN to take her place. Instead, the hospital created the new position of occupational medicine services coordinator (OMSC), which Diven, the former lab secretary, filled. OMSC duties included drug and alcohol testing, conducting physicals, drawing blood, audio testing, pulmonary function testing, performing injections, and otherwise assisting physicians. In addition, the OMSC position required Diven to take on responsibility for coordinating some of

OM's programs. The vacant lab secretary position was filled by Brenda Schell. The Union continued to represent the lab secretary, but did not represent Diven in her new position as OMSC.

Between 2002 and 2005 OM's services continued to expand. In response the OM lab secretary position evolved to encompass substantially more tasks than its original clerical duties. By the end of 2004 Schell spent approximately seventy-five percent of her time doing various clinical activities and twenty-five percent of her time on clerical tasks. By 2005, in addition to her clerical tasks, Schell's duties included breath alcohol testing, various types of on- and off-site drug testing and paperwork, multiphasic computer entry, setting up medical equipment, vision screening, urinalysis dips, assisting with blood drawing, taking vital signs, and conducting physicals.

In 2004 Pulice, OM's director, was replaced by Pam Payne under the new title of occupational medicine director. Payne took over many of the clerical and billing duties formerly performed by the lab secretary. Payne also reviewed the OM job descriptions and decided that they should be changed. Accordingly, in 2005 Payne eliminated the lab secretary position and posted the newly created positions of occupational medicine assistant (OMA) I and II. (The only difference between the two positions is that the OMA II is full-time and the OMA I is part-time.)

5

Schell received the OMA II position, and Roseann Orwig received the OMA I position. Like Schell, Orwig's previous title was lab secretary. The OMA job descriptions required applicants to have a high school diploma, current CPR certification, and basic computer and typing skills. The positions also list several preferred clinical certifications, some of which had previously been obtained by Schell and Orwig for their lab secretary positions. The OMA clinical duties were substantially the same as Schell's previous duties as lab secretary, except that audio and phlebotomy testing were added. Schell's OMA clerical duties also were substantially the same as her previous duties, and there was no change in her work days, hours, or supervision. As an OMA, Schell continued to spend twenty-five percent of her time on clerical tasks and seventy-five percent of her time on clinical tasks.

At the same time the OMA positions were created, the OMSC title was changed to occupational medical coordinator (OMC), and Diven remained in this position. While the OMC tasks remained substantially the same as the OMSC tasks, the OMC had "quasi-supervisory duties" such as taking over the director's responsibilities in Payne's absence. J.A. 220. Fairmont General listed the OMAs and OMC as non-union in their position descriptions. Thus, Diven remained in a non-union position, while

Schell and Orwig ceased being represented by the Union as the result of the title change.

C.

In August 2005 the Union filed a petition for unit clarification with the NLRB seeking to include the new OMA positions in the bargaining unit. After a hearing and briefing the Regional Director issued his decision. As a preliminary matter, he concluded that the unit clarification procedure was appropriate under Board precedent because there were ambiguities concerning the bargaining unit placement of individuals coming within the newly created OMA job title.

The Regional Director then considered the unit clarification petition. After reviewing the evidence, the Regional Director found that the OM lab secretary was historically included in the bargaining unit, despite the position's increase in clinical duties over time; Schell's duties as OMA were similar to her previous duties as lab secretary; and the OMA functions were similar to those performed by other bargaining unit positions. Based on these factual findings and Board precedent, the Regional Director concluded that the OMAs should remain in the bargaining unit because they "perform[ed] work which had historically been performed by unit positions." J.A. 425. Fairmont General appealed to the NLRB, and a divided panel relied on the Regional Director's findings and denied the request for review.

7

To obtain judicial review of the decision, Fairmont General refused to recognize or bargain with the Union as the representative of the OMAs. The Union then filed an unfair labor practice charge alleging the hospital's refusal to bargain in violation of the National Labor Relations Act. The Board granted summary judgment to the Union and ordered Fairmont General to bargain with the Union as the representative of employees in the OMA position. The Board now petitions for enforcement of its order.

II.

Fairmont General raises two arguments in opposition to enforcement. First, it contends that the Board erred in considering the unit clarification petition because the OMA position had been historically excluded from the bargaining unit. Second, the hospital argues in the alternative that the Board applied the wrong legal standard when considering the petition and (under any legal standard) reached the wrong conclusion.

In reviewing a decision of the Board, we must first ensure that it is employing "reasoned decision-making" by consistently applying its own legal standards. Baltimore Sun Co. v. NLRB, 257 F.3d 419, 428 (4th Cir. 2001) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 376 (1998)). We then

8

determine whether the Board decision is supported by substantial evidence.  Id. (citing 29 U.S.C. § 160(e)).

## III.

Fairmont General first contends that the Board improperly allowed the Union to pursue the unit clarification procedure rather than restricting the Union's remedy to a petition for election. The Board has authority to define "the unit appropriate for the purposes of collective bargaining."  29 U.S.C. § 159(b).  During the term of an existing union contract, a unit clarification proceeding is appropriate for resolving ambiguities concerning the bargaining unit placement of individuals who come within newly created job classifications.  NLRB v. Magna Corp., 734 F.2d 1057, 1061 (5th Cir. 1984); Union Elec. Co., 217 N.L.R.B. 666, 667 (1975).  It is not appropriate for the Board to consider a unit clarification petition, however, when the position has been historically excluded from the bargaining unit.  Magna Corp., 734 F.2d at 1060; see also NLRB v. Miss. Power & Light Co., 769 F.2d 276, 279-80 (5th Cir. 1985) (explaining rationale for rule).

Fairmont General argues that the unit clarification procedure was improper here because the OMA positions were successors to the OMSC position, which was historically excluded from the bargaining unit.  In support of its position, Fairmont General refers to a different proceeding, where the Regional

9

Director concluded that another position, the <u>OMC</u> position, was the successor to the OMSC position and thus was not subject to a unit clarification petition. We do not find this argument persuasive.

In the case before us, the Regional Director concluded that the OMA positions were not the successors to the OMSC position. The record supports this conclusion. The parties agree that the OMA positions were new titles created in 2005. The written OMA job descriptions differ from those for the OMSC and the OMC positions because the latter two positions both involve "quasi-supervisory duties" that are absent in the OMA positions. J.A. 220. The quasi-supervisory duties include coordinating day-to-day operations when the director is absent. Furthermore, the use of the word "coordinator" in the OMC job title and the word "assistant" in the OMA title indicates a difference in responsibility between the positions. Finally, as discussed further in the next part, the evidence indicates that the OMA position succeeded the OM lab secretary position, which was historically included in the bargaining unit. Thus, it was reasonable for the Regional Director to conclude that the OMA positions were not successors to the OMSC position and therefore had not been historically excluded from the bargaining unit, making a unit clarification proceeding appropriate. See <u>Magna Corp.</u>, 734 F.2d at 1061; <u>Union Elec. Co.</u>, 217 N.L.R.B. 666. Since the

10

Regional Director did not err in using the unit clarification procedure, we now turn to the substance of the Board's order.

IV.

In addressing a unit clarification petition for a newly created job title, the NLRB conducts a two-step analysis. The Board first considers whether "a new classification is performing the same basic functions as a unit classification historically had performed." Premcor, Inc., 333 N.L.R.B. 1365, 1366 (2001); Developmental Disabilities Inst., Inc., 334 N.L.R.B 1166, 1168 (2001). If so, the new classification is properly understood as "remaining in the unit," thus resolving the unit clarification petition. Premcor, Inc., 333 N.L.R.B. at 1366; see also Developmental Disabilities Inst., Inc., 334 N.L.R.B at 1168.

If the new classification does not remain in the unit under the Premcor standard, however, the Board considers whether the new position should be added to the bargaining unit through accretion. In conducting this analysis, the Board considers whether the employees have "an insufficient group identity to function as a separate unit" and whether they share an "overwhelming community of interest" with the existing bargaining unit. Sara Lee Bakery Group, Inc. v. NLRB, 296 F.3d 292, 297 (4th Cir. 2002) (quoting Baltimore Sun Co., 257 F.3d at 427). The Board

11

looks to several factors in determining whether there is a community of interest. Id. at 298 (listing factors).

In the case before us the Board held that the OMAs remained in the bargaining unit under Premcor. Fairmont General argues that the Board erred in applying Premcor because, it contends, the OMAs do not perform the same basic functions as those performed by the OM lab secretary. After a thorough review of the record, we conclude that substantial evidence supports the Board's decision.

Schell originally joined OM as a lab secretary in 2002; at that time she indisputably fell within the bargaining unit. Although Fairmont General was aware that Schell's duties changed over time to include an increasing amount of clinical work, it never contested the OM lab secretary's bargaining unit status. In 2005, when Schell's title changed from OM lab secretary to OMA, she testified that her duties remained essentially the same as they had been in her previous position. She stated that, as an OMA, she continued to do such tasks as making order entries, taking vital signs, conducting breath alcohol and drug testing, and performing various clerical duties. Schell was able to identify only a minor difference between the positions (the addition of phlebotomy and audio testing in the OMA position), and she reported that the percentages of her time spent on clinical and clerical work remained the same after her title change. In fact, Kimberly

12

Cheuvront, Fairmont General's assistant vice president of business and development, testified that the OMA position was created for the sole purpose of better reflecting the actual work performed by Schell. Cheuvront also testified that Schell retained the same work hours, supervision, and job site after the title changes.

Fairmont General argues that the Board should not have compared Schell's duties directly before and after the title change to determine whether both positions performed the same basic functions. Instead, it argues, the Board should have compared the tasks originally performed by the OM lab secretary in 1998 with the OMA job description adopted in 2005. This argument misreads the Board's "same basic functions" analysis, however. In applying this standard to clarify the unit placement of a new classification, the Board has consistently compared the position duties in the time closely preceding a title change with those assumed immediately after the title change. See, e.g., Premcor, Inc., 333 N.L.R.B. at 1365-66; Developmental Disabilities, Inc., 334 N.L.R.B. at 1166-68. The Board appropriately applied the same analysis in this case.

The Board's conclusion finds further support in the existing unit description in the Union contract. See Developmental Disabilities, Inc., 334 N.L.R.B. at 1168 (Hurtgen, concurring). As defined by the contract, and in contrast to the technical positions represented by SEIU, the OMA and other unit positions do not "require a course of study or an extensive technical training

13

course or apprenticeship." J.A. 308. Instead, the OMA positions simply require a high school diploma, CPR certification, and basic typing and computer skills. Furthermore, despite Fairmont General's argument that the Union does not represent positions that perform clinical work, OMAs perform similar tasks as other bargaining unit positions. For example, like OMAs, nurse's aides take blood pressures, document patient information, take vital signs, and perform blood sugar, breath alcohol, and drug testing. Several bargaining unit positions are, also like OMAs, responsible for stocking and ordering supplies, preparing patient records and examination rooms, and answering phones.

We recognize that the employer contested the Union's evidence by presenting some testimony that OMA duties were more similar to the OMC duties than to the OM lab secretary duties. There is no basis, however, for us to conclude that the Regional Director erred in his credibility determinations or in weighing the evidence. In sum, because there is substantial evidence in the record to establish that the employees in the OMA positions performed "the same basic functions as [the OM lab secretary] historically had performed," Premcor, Inc., 333 N.L.R.B. at 1366, the Board did not err in its ultimate decision to include the OMA positions in the bargaining unit. An accretion analysis is therefore unnecessary in light of our holding that Premcor and the record support the Board's decision.

14

V.

For the foregoing reasons, the Board's petition for enforcement of its order is granted.

<u>PETITION FOR ENFORCEMENT</u>
<u>OF ORDER GRANTED</u>

15