# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60063

United States Court of Appeals
Fifth Circuit

**FILED**
February 25, 2016

Lyle W. Cayce
Clerk

DIXIE ELECTRIC MEMBERSHIP CORPORATION,

Petitioner/Cross - Respondent

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent/Cross - Petitioner

Petitions for Review of an Order
of the National Labor Relations Board

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Dixie Electric Membership Corporation reclassified two categories of employees as supervisors, which caused those employees to be excluded from the bargaining unit covered by a collective bargaining agreement. The National Labor Relations Board concluded the corporation committed an unfair labor practice. Dixie Electric petitioned this court for review of the decision. We DENY the petition and ENFORCE the Board's order.

### FACTS AND PROCEDURAL BACKGROUND

Dixie Electric provides electricity for residential and commercial customers in southern Louisiana. For more than forty years, the International Brotherhood of Electrical Workers, Local Union 767 has represented

No. 15-60063

employees at Dixie Electric's Baton Rouge, Louisiana facility. The relevant collective bargaining agreement (the "contract") between Dixie Electric and the union was in effect from February 2007 to February 2011. The contract included chief systems operators and systems operators (collectively, "systems operators") among employees in the bargaining unit. Systems operators are primarily control-room dispatchers responsible for assigning field personnel to address power outages and other problems. They also monitor and control certain electrical systems, analyze outages, prioritize work assignments, and maintain records.

In August 2010, Dixie Electric began making plans to adjust the duties of systems operators and reclassify them as supervisors. Dixie Electric's chief executive officer, John Vranic, met with Floyd Pourciau, the union's business manager, on November 17 to discuss the decision. Vranic gave Pourciau a letter memorializing the details, which provided:

> [E]ffective December 1, . . . the . . . Systems Operator and Chief Systems Operator . . . will be eliminated and new management positions having the same titles will be utilized . . . . Existing employees will be promoted to the new management positions.

Pourciau objected and said the union would file an unfair labor practice charge. Another Dixie Electric official, Ronald May, testified that he met with affected employees to notify them of the reclassification about one week earlier. Dixie Electric provided those individuals with a similar letter. Dixie Electric effectuated its plan, as promised, on December 1.

In February 2011, Dixie Electric and the union agreed on a new contract effective through February 2015 (the "new contract"). The union reserved its objection to the reclassifications during negotiations, and both parties agreed to abide by a "final legal determination . . . on any charge or suit" as to whether the systems operators should be included in the bargaining unit. One month later, the union filed a charge alleging that Dixie Electric committed an unfair

No. 15-60063

labor practice by unilaterally removing employees from the bargaining unit. Dixie Electric filed a unit clarification petition in July concurrently with its answer to the charge seeking a final resolution as to whether the positions could be lawfully excluded under the new contract. Weeks later, Dixie Electric filed a separate unit clarification petition.

After briefing and a hearing, an administrative law judge ("ALJ") held in January 2012 that Dixie Electric violated the National Labor Relations Act ("NLRA") by modifying the scope of the bargaining unit, and in the alternative, transferring work out of the unit without bargaining over the subject. The ALJ did not consider Dixie Electric's unit clarification petitions, deeming them untimely. The National Labor Relations Board affirmed the decision in August 2012. *Dixie Elec. Membership Corp.*, 358 N.L.R.B. 120 (2012). Dixie Electric timely petitioned this court for review. The Board General Counsel filed a cross-petition for enforcement. At the time, two Board members' appointments were under challenge as constitutionally infirm. This court stayed proceedings until the appointments issue was resolved. The Supreme Court later held that the appointments were invalid which, in turn, invalidated the Board's *Dixie Electric* decision. *See N.L.R.B. v. Noel Canning*, 134 S.Ct. 2550 (2014). Thereafter, we vacated the Board's 2012 order and remanded the case for *de novo* reconsideration. In November 2014, a newly constituted Board again adopted the ALJ's findings and conclusions of law. *Dixie Elec. Membership Corp.*, 361 N.L.R.B. 107 (2014). Dixie Electric timely petitioned for review.

DISCUSSION

Board decisions that are "reasonable and supported by substantial evidence on the record considered as a whole" are upheld. *Strand Theatre of Shreveport Corp. v. N.L.R.B.*, 493 F.3d 515, 518 (5th Cir. 2007); *see also* 29 U.S.C. § 160(e). "Substantial evidence is such relevant evidence as a

reasonable mind would accept to support a conclusion." *J. Vallery Elec., Inc. v. N.L.R.B.*, 337 F.3d 446, 450 (5th Cir. 2003) (quotation marks omitted). This court reviews the Board's legal conclusions *de novo*, but "will enforce the Board's order if its construction of the statute is reasonably defensible." *Strand Theatre*, 493 F.3d at 518 (quotation marks omitted).

## I.    *Unilateral Modification of the Scope of the Unit*

The Board concluded Dixie Electric violated Section 8(a)(5) and (d) when it eliminated the systems operator positions mid-contract and gave those employees new positions outside the bargaining unit. *See* 29 U.S.C. § 158(a)(5), (d). Dixie Electric did not squarely address the alleged impropriety of unilaterally making that change on appeal. Instead, it focused almost exclusively on whether the affected employees are supervisors. The Board did not make a factual finding on that issue, reasoning that whether the affected employees are supervisors is irrelevant because Dixie Electric voluntarily chose to include them in the unit.

The scope of a unit covered in a contract is a permissive subject of bargaining. *National Fresh Fruit & Vegetable Co. v. N.L.R.B.*, 565 F.2d 1331, 1334 (5th Cir. 1978). Thus, an employer cannot insist on bargaining to impasse over the "construction of an appropriate unit so as to exclude certain members." *Hess Oil & Chem. Corp. v. N.L.R.B.*, 415 F.2d 440, 445 (5th Cir. 1969). The rationale underlying this principle is that the parties cannot bargain meaningfully about mandatory subjects, like terms and conditions of employment, "unless they know the unit of bargaining." *Id.* at 444. For the same reasons, the Board has also long held that the scope of a unit, once established, cannot be unilaterally modified while a contract is in effect. *See Arizona Elec. Power*, 250 N.L.R.B. 1132 (1980). Other circuits recognize that "if an employer could vary unit descriptions at will, it would have the power to

sever the link between a recognizable group of employees and its union as the collective bargaining representative of these employees," which would render a contract meaningless. *See Hill-Rom Co. v. N.L.R.B.*, 957 F.2d 454, 457 (7th Cir. 1992). We agree and hold that an employer who unilaterally removes a job title from a bargaining unit mid-contract violates the NLRA.

Here, it is undisputed that Dixie Electric unilaterally modified the scope of the unit. The contract expressly included systems operators. Dixie Electric admittedly made the decision to remove those job titles from the unit during the life of the contract without approval from the Board and with express disapproval from the union. We agree with the NLRB that such action is an unfair labor practice. *See Arizona Elec. Power*, 250 N.L.R.B. at 1132.

In its brief, Dixie Electric implies that because supervisors are not afforded rights under the NLRA, it was permitted to remove systems operators from the bargaining unit regardless of the contract. *See* 29 U.S.C. § 152(3) (defining "employee"), (11) (defining "supervisor"); *id.* § 164(a) (providing that employers may not be compelled to include supervisors in a unit). As previously discussed, the Board reasoned that an employer may voluntarily recognize a unit containing supervisors. We need not address Dixie Electric's argument, though, as it was unaccompanied by any legal support on appeal. *See United States v. Tomblin*, 46 F.3d 1369, 1376 n.13 (5th Cir. 1995) (holding that a petitioner does not preserve an issue by making an assertion in its brief without providing any legal argument indicating its basis).

It is clear, based on the facts, law, and arguments properly before us, that the bargaining unit covered in the contract included systems operators. By unilaterally removing those classifications of employees from the bargaining unit during the term of the contract, Dixie Electric violated the

No. 15-60063

NLRA. *See* 29 U.S.C. § 158(a)(5), (d). The Board's order is valid.[1]

## II.     *Unit Clarification Petition*

Turning to Dixie Electric's attempt to clarify the bargaining unit, both parties and the Board appear to agree that a unit clarification petition is the appropriate vehicle to determine whether the affected employees were supervisors for purposes of the new contract. Unit clarification procedures provide the Board with the authority to clarify units established by a contract if certain classifications of employees should not be included under the NLRA. *See Washington Post Co.*, 254 N.L.R.B. 168, 169 (1981). The only question before us is whether Dixie Electric's petition was timely.

The Board has held that unit clarification petitions may not be filed mid-contract to upset an established collective bargaining agreement between a union and employer. "Rather, unit clarification is appropriate, *inter alia*, for resolving disputes concerning the unit placement of employees . . . whose duties and responsibilities have undergone recent substantial changes which create real doubt as to whether their positions continue to fall in the category – excluded or included – that they occupied in the past." *N.L.R.B. v. Magna Corp.*, 734 F.2d 1057, 1061 (5th Cir. 1984) (citing *Massachusetts Teachers Ass'n*, 236 N.L.R.B. 1427, 1429 (1978)). While petitions may be entertained if filed "shortly after" a contract is executed, the outer limit of "shortly after" recognized so far is 79 days. *See Baltimore Sun Co.*, 296 N.L.R.B. 1023, 1024 (1989).

Here, the new contract between Dixie Electric and the union was effective February 28, 2011. The union filed its charge on March 7, and Dixie

---

[1] Because we agree with the Board that Dixie Electric violated the NLRA by modifying the scope of the bargaining unit without consent of the union or Board, we need not reach the issue related to Dixie Electric's alleged unilateral transfer of work outside the unit.

No. 15-60063

Electric tacked a unit clarification petition on to its answer filed July 6.  Dixie Electric filed a full unit clarification petition on July 21.  Thus, Dixie Electric filed its petition more than four months after execution of the new contract. Dixie Electric attributed its tardiness to the union's failure to expressly request bargaining on the issue and the union's delay in filing its charge.

We grant the Board "broad discretion in resolving unit clarification questions" and only reverse when its conclusion is arbitrary and capricious. *Magna Corp.*, 734 F.2d at 1061 (citing *N.L.R.B. v. Baton Rouge Waterworks Co.*, 417 F.2d 1065, 1067 (5th Cir. 1969)).  Under this deferential standard, we find that the Board's factual finding that Dixie Electric's petition is untimely is supported by substantial evidence.  While there is no "precise . . . time limit for the filing of such petitions," Dixie Electric's delay is far beyond the examples in Board decisions and case law.  *Baltimore Sun Co.*, 296 N.L.R.B. at 1024. Dixie Electric, moreover, offers no convincing explanation for its late filing. Dixie Electric was not required to wait for the union to file its threatened charge to request clarification of the unit from the Board.  Considering the petition now would inappropriately disrupt the parties' bargaining relationship, and therefore, the Board's conclusion that the petition was untimely is reasonable.  *See Magna Corp.*, 734 F.2d at 1061 (citing *Massachusetts Teachers Ass'n*, 236 N.L.R.B. at 1429).

\* \* \*

Dixie Electric's petition is DENIED and the Board's order is ENFORCED.

7