956 F.2d 317
 139 L.R.R.M. (BNA) 2589, 294 U.S.App.D.C. 31,
120 Lab.Cas. P 11,120
 TEAMSTERS LOCAL UNION NOS. 822 AND 592 a/w International
Brotherhood of Teamsters, Chauffeurs,
Warehousemen, and Helpers of America,
AFL-CIO, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Lone Star Industries, Inc., Intervenor.
 No. 90-1372.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 19, 1991.
Decided Feb. 19, 1992.
 
 Petition for Review of a Supplemental Decision and Order of the National Labor Relations Board.
 Jonathan G. Axelrod, Washington, D.C., for petitioners.
 Joseph J. Jablonski, Jr., Attorney, N.L.R.B., with whom Jerry M. Hunter, Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, Washington, D.C., were on the brief, for respondent. Paul J. Spielberg, Atty., N.L.R.B., Washington, D.C., also entered an appearance for respondent.
 Thomas G. Greaves, III, Greenville, S.C., entered an appearance for intervenor.
 Before WALD and RUTH BADER GINSBURG, Circuit Judges, and THOMAS, Circuit Justice.*
 Opinion for the Court filed by Circuit Justice THOMAS.
 
 THOMAS, Circuit Justice:
 
 1
 Section 8(a)(3) of the National Labor Relations Act makes it an unfair labor practice for an employer "by discrimination in regard to hire ... to ... discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). Section 8(a)(1) of the Act makes it an unfair labor practice for an employer "to interfere with ... employees in the exercise of the rights guaranteed in section [7 of the Act]," id. § 158(a)(1), which include the rights "to self-organization [and] to bargain collectively through representatives of [employees'] own choosing," id. § 157. Violations of section 8(a)(3) are always violations of section 8(a)(1) as well; employers that through hiring discourage membership in unions interfere as a matter of law with employees' rights to organize themselves and to bargain collectively through their own representatives. See International Bhd. of Boilermakers, Local 88 v. NLRB, 858 F.2d 756, 761 & n. 1 (D.C.Cir.1988). The question presented in this case is whether a company violates section 8(a)(3), and therefore section 8(a)(1), when it breaches an agreement that settles a strike.
 
 
 2
 * On April 23, 1979, members of Teamsters Local Union Nos. 822 & 592 struck the Richmond and Norfolk plants of Lone Star Industries, Inc., which until it went bankrupt made concrete. Negotiations continued while Lone Star began replacing the striking truck drivers, and on May 9 the company offered to rehire the strikers in order of seniority. The union at first rejected Lone Star's proposal, but after learning that the company had successfully replaced all of the strikers, the Teamsters sent a telegram on June 8 purporting to accept Lone Star's final offer and proposing that its members return to work. Lone Star responded by stating that it doubted whether the union had retained its majority status and that it had therefore decided not to recognize the Teamsters any longer. Lone Star also refused to bargain with the Teamsters any further over terms or conditions of employment, including the method by which the strikers were to be recalled. As jobs began to open up, though, the company started rehiring the strikers in order of seniority. On the advice of a company lawyer, Lone Star changed its procedures in May 1980 and began to recall the strikers based on other factors, such as their health.
 
 
 3
 The union meanwhile petitioned the National Labor Relations Board for an election to determine its status. The union also charged Lone Star with violations of sections 8(a)(3) and (1) and 8(a)(5) of the National Labor Relations Act, the last of which makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Because the Board does not consider certification petitions while section 8(a)(5) charges are pending, see, e.g., City Markets, Inc., 273 N.L.R.B. 469, 470 (1984), the Teamsters eventually decided to dismiss their 8(a)(5) charge voluntarily. (The Teamsters ultimately won the election held after they had withdrawn their charge.) The Teamsters pursued their sections 8(a)(3) and (1) charge, and the case came before an administrative law judge.
 
 
 4
 The ALJ decided, among other things, that Lone Star and the Teamsters had reached an agreement on settling the strike, that Lone Star had breached the agreement by failing to recall the strikers in order of seniority, and that in breaching the agreement Lone Star had violated sections 8(a)(3) and (1). Lone Star Indus., Inc., No. 5-CA-12015 (A.L.J. June 30, 1982). Lone Star appealed, and with respect to the recall issue the Board reversed. Lone Star Indus., Inc., 279 N.L.R.B. 550 (1986) [hereinafter Lone Star I ]. The Board held that Lone Star could have violated sections 8(a)(3) and (1) in the circumstances presented only if it had also violated section 8(a)(5). The Teamsters' voluntary dismissal of their 8(a)(5) charge, the Board decreed, required that the ALJ dismiss as well the part of the complaint charging that Lone Star's refusal to recall strikers in seniority order violated sections 8(a)(3) and (1).
 
 
 5
 The union petitioned this court for review, and we vacated that part of the decision and remanded the case for further proceedings. Teamsters Local Union Nos. 822 & 592 v. NLRB, 813 F.2d 472 (D.C.Cir.1987) (table). In an unpublished memorandum we noted that the Board had not explained why it had concluded that the alleged 8(a)(3) and (1) violations depended on an anterior finding of an 8(a)(5) violation. On remand, the Board (with Member Cracraft dissenting) reaffirmed its decision that Lone Star had not violated sections 8(a)(3) and (1). Lone Star Indus., Inc., 298 N.L.R.B. No. 160, 134 L.R.R.M. (BNA) 1219, 1989-1990 NLRB Dec. (CCH) p 16,124 (July 11, 1990) [hereinafter Lone Star II ]. The Teamsters then petitioned for review a second time. For the second time, we vacate and remand.
 
 II
 
 6
 In reaffirming after remand its earlier decision that Lone Star had not violated sections 8(a)(3) and (1), the Board supplied some analysis in support of its decision. As the Board recognized, an employer violates sections 8(a)(3) and (1) when it intends to discourage union membership. See Lone Star II, 298 N.L.R.B. No. 160, at 4, 134 L.R.R.M. at 1220-21, 1989-1990 NLRB Dec. at 30,332; Lone Star I, 279 N.L.R.B. at 551; NLRB v. Great Dane Trailers, Inc., 388 U.S. 26, 33, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967). The Board also understood what the Supreme Court explained in Great Dane: Some conduct speaks for itself.
 
 
 7
 [I]f it can reasonably be concluded that the employer's discriminatory conduct was "inherently destructive" of important employee rights, no proof of an antiunion motivation is needed and the Board can find an unfair labor practice even if the employer introduces evidence that the conduct was motivated by business considerations.... [I]f the adverse effect of the discriminatory conduct on employee rights is "comparatively slight," an antiunion motivation must be proved to sustain the charge if the employer has come forward with evidence of legitimate and substantial business justifications for the conduct.
 
 
 8
 Id. at 34, 87 S.Ct. at 1798; see Lone Star I, 279 N.L.R.B. at 551. The Teamsters acknowledge that Great Dane governs this case. Although the Board failed in Lone Star II to mention Great Dane by name, we are satisfied that the Board applied the principles set out by the Supreme Court.
 
 
 9
 We are less certain that the Board followed principles of its own. The Teamsters acknowledge here that they can offer no direct evidence of antiunion animus. In trying to invoke the burden shifting of Great Dane, the Teamsters contend that Lone Star's conduct was "inherently destructive" of the striking drivers' rights or at least imposed on them a burden that was real, even if "comparatively slight." The Board decided that Lone Star had not burdened any of the employees' rights. It first held that the Teamsters' withdrawal of the 8(a)(5) charge "negat[ed] any possible inference of unlawful antiunion intent" stemming solely from Lone Star's having breached that agreement. Lone Star II, 298 N.L.R.B. No. 160, at 4, 134 L.R.R.M. at 1220, 1989-1990 NLRB Dec. at 30,332. Even if the union and the company had actually entered into an agreement to settle the strike, Lone Star, according to the Board, was not statutorily obliged to implement that agreement; with no claim by the union that the company had unlawfully failed to recognize it or bargain with it, the inference of antiunion animus would have to come from Lone Star's burdening other employee rights. Employees do not, however, enjoy a statutory right to recall in order of seniority. See id. at 5-6 (relying on Laidlaw Corp., 171 N.L.R.B. 1366 (1968), enforced, 414 F.2d 99 (7th Cir.1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970)), 134 L.R.R.M. at 1221, 1989-1990 NLRB Dec. at 30,333. Therefore, according to the Board, the company had not burdened the strikers' rights, and the Board could not infer that the company had meant to discourage union membership.
 
 
 10
 We take no issue with the proposition that employees have no statutory right to recall in order of seniority. Nor do the Teamsters challenge this aspect of the Board's holding; it reflects, after all, the teachings of Laidlaw, and Laidlaw has taken firm root. But the Board's opinion in this case purports to teach that employees have no sections 8(a)(3) and (1) right to ensure that employers comply with agreements that settle strikes--that an employer burdens no employee rights when it breaches a strike settlement agreement and that the employer thus does not violate sections 8(a)(3) and (1) of the National Labor Relations Act. Our role in reviewing the Board's holding is not without some teeth. We defer to the Board when it interprets the Act reasonably, see NLRB v. United Food & Commercial Workers Union, Local 23, 484 U.S. 112, 123, 108 S.Ct. 413, 420-21, 98 L.Ed.2d 429 (1987), but the Board must provide a reasoned explanation when it alters its course, see Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 41-42, 57, 103 S.Ct. 2856, 2865-66, 2874, 77 L.Ed.2d 443 (1983). The union contends that the Board in this case spurned its prior precedent and that the Board has not explained why. We agree.
 
 
 11
 The Board itself has twice before held that an employer does violate sections 8(a)(3) and (1) when it breaches a strike settlement agreement: first in United Aircraft Corp., 247 N.L.R.B. 1042 (1980), enforced mem., 661 F.2d 909 (2d Cir.1981), cert. denied, 455 U.S. 1001, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982), and more recently in Virginia Holding Corp. (The Hotel Roanoke), 293 N.L.R.B. No. 16, 132 L.R.R.M. (BNA) 1229, 1988-1989 NLRB Dec. (CCH) p 15,414 (Mar. 15, 1989). In each case, a company settled a strike by agreeing on (among other issues) the method of recalling striking workers, then breached the agreement. In each case, the Board held that the company had violated sections 8(a)(3) and (1). Its discussion of the issue is spare in The Hotel Roanoke. In United Aircraft, though, the Board spoke at length and with conviction.
 
 
 12
 [B]y encouraging adherence to the provisions of collective-bargaining agreements we further "the express and fundamental policy of the Act to encourage the practice and procedure of collective bargaining as an important means for achieving industrial peace and stability." Thus, we have specifically recognized that the breach of the provisions of a strike settlement agreement "runs counter to the basic policy of the Act to encourage the peaceful settlement of labor disputes through the practice and procedure of collective bargaining."
 
 
 13
 ....
 
 
 14
 With respect to breaches of the [strike settlement agreement] by [United Aircraft], we conclude that violations of the agreement were violations of the statute as well.... [I]t is an express and fundamental policy of the Act to encourage the peaceful resolution of labor disputes through the practice and procedure of collective bargaining. The negotiation of the [strike settlement agreement] by the parties was instrumental in ending a long and bitter strike. In those instances when [United Aircraft] acted in derogation of the [agreement], of necessity its conduct adversely affected the employees' bargained-for rights to reinstatement and ran counter to the overriding national policy that encourages the peaceful resolution of labor disputes through collective bargaining. Thus, contrary to [United Aircraft's] contention that any breaches of the [agreement] were nothing more than violations of the Union's private contract rights, we conclude that such breaches of a strike settlement agreement are within the cognizance of the National Labor Relations Board and that, consistent with our obligations under the statute, such breaches when properly brought to our attention must be found and remedied by us in the public interest.
 
 
 15
 247 N.L.R.B. at 1045 (footnotes omitted).
 
 
 16
 All of what the Board said in United Aircraft appears to apply here. In a footnote in its opinion in this case the Board dismissed its prior efforts, calling United Aircraft and The Hotel Roanoke "distinguishable from this case because the specific acts that breached the agreements in those cases discriminatorily favored nonstrikers at the expense of strikers." Lone Star II, 298 N.L.R.B. No. 160, at 7 n. 6, 134 L.R.R.M. at 1221 n. 6, 1989-1990 NLRB Dec. at 30,334 n. 6. Member Cracraft, dissenting, found the Board's distinction feeble. So do we. Employees settle strikes through contract at least in part because they expect their employer to honor the terms of a settlement. Breaches by the employer of strike settlements negotiated by unions sap the employees' power to achieve their goals by bargaining and thereby discourage membership in the labor organizations that give the employees at least some of their bargaining power in the first place. That, it appears, is the principle animating United Aircraft, as the passages demonstrate. The Board has yet to explain why it now discredits that principle.
 
 
 17
 We do not mean to suggest that there are no contrary considerations. Grounds might exist for abandoning United Aircraft (and The Hotel Roanoke, to the extent that it rests on United Aircraft 's rationale). Had the Board offered an adequate explanation, we might have approved the Board's decision here. It did not. Instead, in its opinion in this case the Board seems to have decided to explain its change of course by not explaining its change of course. This it cannot do. See Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C.Cir.1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).
 
 
 18
 * * *
 
 
 19
 In two prior cases, the Board held that an employer violated sections 8(a)(3) and (1) of the National Labor Relations Act when it breached a union-negotiated agreement that settled a strike. In this case, the Board held just the opposite. We hold that the Board failed here to explain satisfactorily why it chose not to follow its prior precedent. We therefore grant the petition for review, vacate the Board's decision, and remand this case yet again for further proceedings consistent with this opinion.
 
 
 20
 It is so ordered.
 
 
 
 *
 Justice Thomas was a member of this court when the case was briefed and argued and is designated today a Circuit Justice of this circuit. See 28 U.S.C. §§ 42, 43(b)