# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 19, 2011          Decided June 8, 2012

No. 10-1300

E.I. DU PONT DE NEMOURS AND COMPANY,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED STEEL, PAPER AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
INTERVENOR

———

Consolidated with 10-1301, 10-1353, 10-1355

———

On Petitions for Review and Cross-Applications for
Enforcement
of Orders of the National Labor Relations Board

———

*Steven W. Suflas*, argued the cause for petitioner. With him on the briefs were *Denise M. Keyser*, *Mark L. Keenan*, and *Brennan W. Bolt*. *Donna D. Page* entered an appearance.

*MacKenzie Fillow*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief

were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Robert J. Englehart*, Supervisory Attorney. *Daniel A. Blitz*, Attorney, entered an appearance.

*Matthew J. Ginsburg*, argued the cause for intervenor. On the brief were *Richard J. Brean*, *Daniel M. Kovalik*, and *James B. Coppess*. *Mariana L. Padias* entered an appearance.

Before: GINSBURG,[*] *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

Opinion concurring in part and concurring in the judgment filed by *Senior Circuit Judge* RANDOLPH.

GINSBURG, *Circuit Judge*: The National Labor Relations Board held E.I. Du Pont de Nemours & Co. engaged in an unfair labor practice by unilaterally implementing changes to its employee benefits program while it was between collective bargaining agreements with two local unions. Because the Board departed, without giving a reasoned justification, from its precedent allowing an employer unilaterally to change wages, hours, or working conditions when doing so is in keeping with the employer's past practice, we grant Du Pont's petitions for review of the Board's order and deny the Board's cross-applications for enforcement.

---

[*] As of the date the opinion was published, Judge Ginsburg had taken senior status.

## I. Background

Du Pont offers its employees a package of benefits it calls Beneflex, of which the Beneflex Medical component has an open enrollment period each Autumn. The plan documents for Beneflex and for Beneflex Medical contain the following reservation of rights clause:

> The Company reserves the sole right to change or discontinue this Plan in its discretion provided, however, that any change in price or level of coverage shall be announced at the time of annual enrollment and shall not be changed during a Plan Year unless coverage provided by an independent, third-party provider is significantly curtailed or decreased during the Plan Year.

Du Pont has made changes to Beneflex at the time of enrollment each year since at least 1996. Changes to the program have included increases in the premiums for medical, life, vision, and dental insurance, changes in coverage, and the addition and elimination of plan options. These changes to Beneflex applied to employees at all Du Pont facilities, to union and non-union employees alike.

Du Pont had collective bargaining agreements (CBAs) with the local unions at the Company's production facilities in Louisville, Kentucky and Edgemoor, Delaware. Each CBA provided for employees to participate in Beneflex "subject to all terms and conditions" of the plan. The Beneflex plan documents, in turn, contained the reservation of rights clause. Until the CBAs at the two locations expired in 2002 and 2004 respectively, Du Pont had made annual changes to Beneflex without bargaining and without objection from the unions.

When the CBAs expired, Du Pont and the unions were negotiating successor labor contracts but had not reached an agreement at either facility. Du Pont then implemented changes to Beneflex in anticipation of the annual enrollment period, as it had done in previous years.

The Board held Du Pont violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act by making unilateral changes to Beneflex during ongoing negotiations with the unions. It found Du Pont had never before made changes to Beneflex between the expiration of one and the negotiation of another CBA, and therefore had not established a past practice justifying its unilateral changes to Beneflex during such a hiatus. Du Pont petitioned for review of the Order and the Board cross-applied for enforcement.

## II. Analysis

We will uphold a decision of the Board unless it relied upon findings that are not supported by substantial evidence, failed to apply the proper legal standard, or departed from its precedent without providing a reasoned justification for doing so. *S & F Mkt. St. Healthcare LLC v. NLRB*, 570 F.3d 354, 358 (D.C. Cir. 2009). Section 8(a)(5) of the Act makes it an unfair labor practice for an employer to "refuse to bargain collectively with the representatives of his employees," 29 U.S.C. § 158(a)(5). An "employer's unilateral change in conditions of employment under negotiation is ... a violation of § 8(a)(5), for it is a circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal" to bargain. *NLRB v. Katz*, 369 U.S. 736, 743 (1962); *see Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991) ("it is difficult to bargain if, during negotiations, an

employer is free to alter the very terms and conditions that are the subject of those negotiations").

Under *Katz*, an employer unilaterally may implement changes "in line with [its] long-standing practice" because such changes amount to "a mere continuation of the status quo." 369 U.S. at 746; *see Courier-Journal*, 342 N.L.R.B. 1093, 1094 (2004) ("a unilateral change made pursuant to a longstanding practice is essentially a continuation of the status quo – not a violation of Section (a)(5)"). The purpose of prohibiting unilateral changes is not advanced by freezing in place the terms of employment when doing so disrupts the established practice for making changes. For this reason, an employer may lawfully change the terms of employment pursuant to such an established practice. There are, however, limits to the scope of the unilateral changes an employer may lawfully make during negotiations. More specifically, the Act does not permit a unilateral change "informed by a large measure of discretion" because "[t]here simply is no way in such [a] case ... to know whether or not there has been a substantial departure from past practice." *Katz*, 369 U.S. at 746.

The Board has previously approved extensive unilateral changes to health care benefit programs during a hiatus between CBAs when doing so was the established practice and the changes were within an acceptable degree of discretion. Thus, in *Post-Tribune Co.*, the Board held it was not unlawful for an employer unilaterally to increase employees' required contributions to health care premiums because the employer "had a consistent, established past practice of allocating health insurance premiums" between itself and its employees at a fixed ratio. 337 N.L.R.B. 1279, 1280 (2002). In *Courier-Journal*, the Board again approved

an increase in the health insurance premium to be paid by employees together with "a number of more far-reaching changes in the healthcare insurance benefits." 342 N.L.R.B. at 1093. There the expired CBA contained a clause providing the employer "reserves the right to modify or terminate any (or all) benefits ... at any time." *Id.* at 1093. After the CBA expired, the employer

> changed the amount of employee contributions to healthcare premiums; modified the framework for determining employee contribution levels; switched from an insurance 'plan year' starting on July 1 to a plan year starting on January 1; introduced separate vision and dental coverage plans; terminated the bonuses paid to employees who chose to waive the [employer's] healthcare insurance; and substituted two plans with [one insurer] for the plans the [employer] had previously offered with [other insurers].

*Id.* at 1099. Under the Board's precedent, therefore, even making broad changes to a benefits package can qualify as "a well-established past practice" that an employer may lawfully continue during a hiatus period. *Id*. at 1094.

Du Pont first argues the unilateral changes it made to Beneflex while negotiating with the unions were lawful because they were in line with the Company's established practice. The Board responds that the Company's practice arose pursuant to a management rights clause in the expired contracts, and therefore does not justify the unilateral changes Du Pont made after the expiration of those contracts. Du Pont also argues the changes were "covered by" the expired CBAs, a position the Board rejects on the ground the "covered by

contract" doctrine applies only if the contract is in effect when the employer makes a change.

We hold Du Pont, by making unilateral changes to Beneflex after the expiration of the CBAs, maintained the status quo expressed in the Company's past practice; those changes were therefore lawful under *Courier-Journal*. While the CBAs were in effect, Du Pont annually made unilateral changes to the package of benefits offered under Beneflex, including changes to the premiums the employees paid and to the benefits they received. Du Pont made the unilateral changes in dispute here after the CBAs had expired, but those changes were similar in scope to those it had made in prior years. Du Pont's discretion in making those changes was limited by the terms of the reservation of rights clause in the Beneflex plan documents, which permitted changes during — and only during — the annual enrollment period. Moreover, here as in *Courier-Journal*, the employer was obligated under its past practice to "treat the [union] employees exactly the same as [the non-union] employees," and so the employer's "discretion was limited" because it "did not have the freedom to grant [non-union] employees a benefit and deny same to [union] employees." 342 N.L.R.B. at 1094. Under the Board's precedent, therefore, Du Pont's making annual changes to Beneflex became a term and condition of employment the Company could lawfully continue during the annual enrollment period, irrespective of whether negotiations for successor contracts were then on-going.

The Board concluded Du Pont violated the Act because it failed to show "relevant past practice under the *Courier-Journal* cases - annual unilateral changes during hiatus periods." *E.I. Du Pont De Nemours, Louisville Works*, 355 N.L.R.B. No. 176, at 2 (Aug. 27, 2010). The Board

distinguished *Courier-Journal* on the ground that the employer there had "established a past practice of making [health care premium] changes both during periods when the contract was in effect and during hiatus periods" whereas Du Pont has made uncontested unilateral changes to Beneflex only while CBAs were in effect. *Id.* The Board emphasized the importance of this "factual distinction" as follows:

> Extending the *Courier-Journal* decisions to the situation presented here would conflict with settled law that a management-rights clause does not survive the expiration of the contract ... and does not constitute a term and condition of employment that the employer must continue following contract expiration.

*Id.*

Be that as it may, whether a management-rights clause survives the expiration of the contract is beside the point Du Pont is making. The Board has previously recognized that the lawfulness of a change in working conditions made after the CBA has expired depends not upon "whether a contractual waiver of the right to bargain survives the expiration of the contract" but rather upon whether the change "is grounded in past practice, and the continuance thereof." *Courier-Journal*, 342 N.L.R.B. at 1095. The Sixth Circuit captured the point precisely in *Beverly Health and Rehabilitation Services, Inc. v. NLRB*, 297 F.3d 468, 481 (2002): "[I]t is the actual past practice of unilateral activity under the management-rights clause of the CBA, and not the existence of the management-rights clause itself, that allows the employer's past practice of unilateral change to survive the termination of the contract." A subsequent Board decision unambiguously incorporates that teaching: "[T]he mere fact that the past practice was

developed under a now-expired contract does not gainsay the existence of the past practice." *Capitol Ford*, 343 N.L.R.B. 1058, 1058 n.3 (2004). Therefore, although the employer "cannot rely upon the management rights clause of that contract to justify unilateral action," the "past practice is not dependent on the continued existence of the [expired] collective-bargaining agreement." *Id.*

Because an employer may make unilateral changes insofar as doing so is but a continuation of its past practice, we see no reason it should matter whether that past practice first arose under a CBA that has since expired. Nor did the Board in *Capitol Ford*, where it upheld as lawful the employer's unilateral changes to employee compensation and paid holidays on the basis of an established practice even though the employer (and its predecessor) had never before made such changes when a CBA was not in force. 343 N.L.R.B. at 1058. The Board has not offered any reason whatsoever for thinking a unilateral action being taken during a hiatus period, although expressly deemed immaterial in *Capitol Ford*, should be dispositive in this case. Indeed, the Board did not so much as cite *Capitol Ford* or *Beverly Health & Rehabilitation Services, Inc.*, 346 N.L.R.B. 1319 (2006), where the Board again said that "without regard to whether the management-rights clause survived, the [employer] would be privileged to have made the unilateral changes at issue if [its] conduct was consistent with a pattern of frequent exercise of its right to make unilateral changes during the term of the contract," *id.* at 319 n.5. Although the Board had in several earlier cases held unilateral changes made pursuant to a past practice developed under an expired management-rights clause were unlawful, *see Beverly Health & Rehab. Servs.*, 335 N.L.R.B. 635, 636-37 (2001); *Guard Publ'g Co.*,

339 N.L.R.B. 353, 355-56 (2003), the Board clearly took a different position in its more recent decisions.

Accordingly, we hold the Board failed to give a reasoned justification for departing from its precedent. On remand, the Board must either conform to its precedent in *Capitol Ford* and in the 2006 iteration of *Beverly Health Services* or explain its return to the rule it followed in its earlier decisions. *See Manhattan Ctr. Studios, Inc. v. NLRB*, 452 F.3d 813, 816 (D.C. Cir. 2010) ("If we conclude that the Board misapplied or deviated from its precedent, we often remand with instructions to remedy the misapplication [or] deviation").[*]

### III. Conclusion

For the reason set out above, Du Pont's petitions for review are granted and the Board's cross-applications for enforcement are denied. We remand the case to the Board for further proceedings consistent with this opinion.

*So ordered.*

---

[*] Because we grant the petitions for review on this ground, we do not reach Du Pont's alternative argument that the changes were "covered by" the expired CBAs.

RANDOLPH, *Senior Circuit Judge*, concurring in part and concurring in the judgment: When the National Labor Relations Board deviates from precedent without "offer[ing] any reason whatsoever for" doing so, Maj. Op. at 9, its action is "arbitrary and capricious" under § 706(2) of the Administrative Procedure Act, 5 U.S.C. § 706(2).[1] In such cases, the APA instructs reviewing courts to "hold unlawful *and set aside*" such "agency action." *Id.* (emphasis added). Despite this command, many of our NLRB decisions simply remand to the Board for further proceedings without requiring anything to be "set aside." *See, e.g.*, *Manhattan Ctr. Studios, Inc. v. NLRB*, 452 F.3d 813, 821 (D.C. Cir. 2006) (per curiam); *LeMoyne-Owen Coll. v. NLRB*, 357 F.3d 55, 61 (D.C. Cir. 2004); *Randell Warehouse*, 252 F.3d at 448-49; *Brusco Tug & Barge Co. v. NLRB*, 247 F.3d 273, 278 (D.C. Cir. 2001); *Lee Lumber & Bldg. Material Corp. v. NLRB*,

---

[1] Although we did not decide whether the APA applies to judicial review of Board orders in *Diamond Walnut Growers, Inc. v. NLRB*, 113 F.3d 1259, 1266 (D.C. Cir. 1997) (en banc), later cases make clear that it does. *See, e.g.*, *NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 712 (2001); *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998); *Pirlott v. NLRB*, 522 F.3d 423, 432 (D.C. Cir. 2008); *W & M Props. of Conn., Inc. v. NLRB*, 514 F.3d 1341, 1348 (D.C. Cir. 2008); *Tasty Baking Co. v. NLRB*, 254 F.3d 114, 123 (D.C. Cir. 2001); *Randell Warehouse of Ariz., Inc. v. NLRB*, 252 F.3d 445, 449 (D.C. Cir. 2001); *Willamette Indus., Inc. v. NLRB*, 144 F.3d 877, 880 (D.C. Cir. 1998); *see also NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 803-04 (1990) (Scalia, J., dissenting). This makes sense given that the APA applies to final agency actions "except to the extent that statutes preclude judicial review, or agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1) & (2); *see also* ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 9 (1947) ("The Administrative Procedure Act applies, with certain exceptions [not relevant here], to *every agency and authority* of the Government." (emphasis added)); *id.* at 15, 98 (indicating that the APA applies to Board orders). There are no such limitations in the National Labor Relations Act.

117 F.3d 1454, 1460 (D.C. Cir. 1997) (per curiam); *Gen. Electric Co. v. NLRB*, 117 F.3d 627, 636 (D.C. Cir. 1997).

It is easy to see why we remand: to give the Board another chance to explain "apparent departures from precedent." *Gen. Electric*, 117 F.3d at 636. Less clear is why remand-only is a proper disposition in view of § 706(2)'s command that the court "set aside" the unlawful agency action. One explanation is that the court simply has not given any particular thought to this remedial wrinkle. There is some evidence to support this theory. In other failure-to-explain cases, we have vacated the Board's order in addition to remanding. *See, e.g.*, *Trump Plaza Assocs. v. NLRB*, No. 10-1412, 2012 WL 1654939, at *3, 7 (D.C. Cir. May 11, 2012); *Nathan Katz Realty, LLC v. NLRB*, 251 F.3d 981, 993 (D.C. Cir. 2001); *Bufco Corp. v. NLRB*, 147 F.3d 964, 971 (D.C. Cir. 1998); *Teamsters Local Union Nos. 822 & 592 v. NLRB*, 956 F.2d 317, 321 (D.C. Cir. 1992); *see also Pirlott*, 522 F.3d at 432. Yet there is no difference between these decisions and those in which the court seems to order only a remand. No opinion of our court has ever tried to reconcile the two lines of cases or even recognized the split.

I explained in *Comcast Corp. v. FCC*, 579 F.3d 1, 10 (D.C. Cir. 2009) (Randolph, J., concurring), and *Checkosky v. SEC*, 23 F.3d 452, 491 (D.C. Cir. 1994) (separate opinion of Randolph, J.), why courts holding an administrative rule or order unlawful must vacate the offending agency action in light of APA § 706(2). But orders of the National Labor Relations Board are somewhat unique. Unlike the orders of other administrative agencies, Board orders are not self-executing. "A party can . . . violate the order with impunity. To put teeth into one of its orders the Board must persuade a court of appeals to enforce the order – in effect, to issue an injunction commanding obedience . . .." *NLRB v. Thill, Inc.*, 980 F.2d 1137, 1142 (7th Cir. 1992); *see also Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1159 (6th Cir.

1996); *NLRB v. Long Island Coll. Hosp.*, 20 F.3d 76, 82 (2d Cir. 1994); ROBERT A. GORMAN & MATTHEW W. FINKIN, BASIC TEXT ON LABOR LAW 14 (2d ed. 2004). One may therefore say that when a court grants a petition for review and denies the Board's cross-application for enforcement of its order (its "agency action"), there effectively is nothing left to set aside. There is no agency action that commands, dictates, or requires. Unlike a remand-only disposition in other areas of the law, no party is required to comply with the unlawful order while the Board reconsiders the matter on remand. The court's judgment enforcing the Board's order, and only that judgment, mandates obedience. In the limited universe of the National Labor Relations Act, therefore, the grant of a petition for review and the denial of a cross-application for enforcement may be viewed as the equivalent of setting aside the Board's order. Or one may say that in such cases the court's failure to vacate the Board's order constitutes harmless error.

Still, it is more tidy and certainly more in keeping with the APA to vacate unlawful orders when we remand cases to the Board. I therefore would vacate the Board's order before remanding.