# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 21, 2020     Decided November 20, 2020

No. 19-1174

BOB'S TIRE CO., INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED FOOD AND COMMERCIAL WORKERS LOCAL 328,
INTERVENOR

Consolidated with 19-1204

On Petition for Review and Cross-Application for
Enforcement
of an Order of the National Labor Relations Board

*Gregory J. Koldys* argued the cause and filed the briefs for
petitioner.

*David A. Seid*, Attorney, National Labor Relations Board,
argued the cause for respondent. With him on the brief were
*Peter B. Robb*, General Counsel, *Ruth E. Burdick*, Acting
Deputy Associate General Counsel, *David Habenstreit*,
Assistant General Counsel, and *Julie Brock Broido*,

Supervisory Attorney. *Meredith Jason*, Supervisory Attorney, entered an appearance.

Before: WILKINS and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Section 8(d) of the National Labor Relations Act ("NLRA" or "Act") requires an employer and a union representative of the employees "to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party." 29 U.S.C. § 158(d). This duty to bargain covers situations in which an employer decides to "replace[] existing employees with those of an independent contractor to do the same work under similar conditions of employment." *See Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 213 (1964).

This case involves an unfair labor practice charge filed by the National Labor Relations Board ("Board") against Bob's Tire Company, Inc. ("Petitioner" or "Bob's"). The charge alleged that Bob's had violated sections 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5) and (1), by failing to notify and bargain with the United Food and Commercial Workers, International Union, Local 328 ("Union"), the employees' bargaining agent, before subcontracting bargaining unit work and unilaterally implementing and discontinuing a performance-based employee bonus program. Following a hearing before an Administrative Law Judge ("ALJ") and

review by the Board, the Board issued a Decision and Order, largely in agreement with the ALJ, finding that Bob's had violated sections 8(a)(5) and (1) of the Act. *Bob's Tire Co., Inc.*, 368 N.L.R.B. No. 33, at 1 (July 31, 2019). The Board ordered Bob's to cease and desist from unfair labor practices, to make bargaining unit employees whole for any lost earnings, to bargain on request with the Union before subcontracting bargaining unit work or implementing any further changes in terms and conditions of employment, and to restore the performance-based bonus program pending the Union requesting its rescission or the parties negotiating an agreement on modifications to the program. *Id.* at 2. However, contrary to the ALJ, the Board found that Bob's did not violate the Act by failing to pay its employees a Christmas bonus in 2015 without giving the Union prior notice and an opportunity to bargain. *Id.*

Bob's now petitions for review of the Board's Order. Bob's argues that the subcontracted work was not bargaining unit work and that, even if it was, the unit employees are owed no remedy because the subcontracting did not cause the loss of any jobs or hours of employment. In the alternative, Petitioner contends Bob's and the subcontractor Masis were joint employers, and, therefore, the subcontractor's employees should have been considered part of the bargaining unit. Bob's also argues the Board erred in adopting the ALJ's finding that Bob's violated the Act by unilaterally implementing and terminating a performance-based employee bonus program. The Board, joined by the Union, cross-petitions for enforcement of its order.

We agree with the Board that there is substantial evidence in the record supporting its findings that Petitioner failed to bargain with the Union before subcontracting bargaining unit work. Furthermore, we agree that an employer's duty to bargain over subcontracting "is not limited to situations in

which employees are laid off or replaced." *Acme Die Casting*, 315 N.L.R.B. 202, 202 n.1 (1994). We express no view as to whether the employees affected by Bob's unfair labor practices are due any backpay. Questions regarding remedies can be resolved during the Board's compliance proceedings. *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 902 (1984). We also reject Petitioner's "joint-employer" argument as specious. Finally, we find we are without jurisdiction to consider Petitioner's arguments regarding the performance-based bonus program, as Petitioner failed to present the issue before the Board. We therefore deny the petition for review and grant the cross-motion for enforcement of the Board's order.

## I. BACKGROUND

### A. Statutory Background

Under the NLRA, an employer commits an unfair labor practice if it "refuse[s] to bargain collectively with the representatives of [its] employees." 29 U.S.C. § 158(a)(5). As noted above, "[t]he obligation to 'bargain collectively' requires an employer to 'confer in good faith with respect to wages, hours, and other terms and conditions of employment.'" *Regal Cinemas, Inc. v. NLRB*, 317 F.3d 300, 309 (D.C. Cir. 2003) (quoting 29 U.S.C. § 158(d)). "An employer thus violates [the Act] by unilaterally changing an existing term or condition of employment without first bargaining to impasse." *Id.* (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991)).

An employer's decision to subcontract bargaining unit work to an "independent contractor to do the same work under similar conditions of employment" is subject to mandatory bargaining. *Fibreboard Paper*, 379 U.S. at 215. There is a caveat, however. If an employer's decision to engage an independent contractor "involv[es] a change in the scope and

direction of the [employer's] enterprise," there is a duty to bargain with the employees' union representative "only if the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business." *First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 677, 679 (1981).

## B. Petitioner's Contract with Masis Staffing Solutions

Petitioner operates a tire recycling business in Massachusetts. Prior to October 2015, Bob's obtained most of its workforce from B.J.'s Service Company, Inc. ("B.J.'s"), a staffing agency that is a joint employer with Bob's. Most of the employees at Bob's perform "yard work" or "general labor." Joint Appendix ("J.A.") 34, 143. The workers unload tires from trucks and separate "good" tires, for resale, from "damaged" tires, for recycling. *Bob's Tire Co., Inc.*, 368 N.L.R.B. No. 33, at 4 (July 31, 2019). Workers recycle damaged tires using various machines that separate tires from their rims, remove sidewalls, and shred tires into chips. J.A. 34-35, 37, 57. Bob's typically sent shredded tires to a plant in Connecticut, which converted them into fuel for a paper mill in Maine. Br. for Pet'r at 4; J.A. 152.

On October 1, 2015, following an election, the Board certified the Union as the exclusive bargaining agent for workers at Bob's in a unit consisting of the following employees: "All full time and regular part time loaders, unloaders, machine operators, yard workers, inspectors, tire painters and truck helpers employed by [Bob's] and/or [B.J.'s] working at [Bob's] . . . but excluding all other employees, mechanics, shredder operators, truck drivers, clerical employees, and supervisors as defined in the Act." J.A. 245. The unit was composed of 79 employees, most of whom came from B.J.'s.

According to Bob's President, Robert Bates, sometime before November 2015, the sale price of tire chips declined and Bob's began losing money producing and transporting the chips. Br. for Pet'r at 4-5. In addition, the tire fuel plant in Connecticut and the paper mill in Maine went bankrupt. However, Bob's was approached by an entity in India that was willing to purchase baled tire treads.

On November 6, 2015, in anticipation of doing business with the company in India, Bob's entered into an agreement with Masis Staffing Solutions ("Masis") pursuant to which Masis would furnish Bob's with workers who would act as "Light Industrial-Loaders/Unloaders." J.A. 264, 271-72. The agreement made clear that the workers would be employees of Masis, not Bob's. J.A. 264, 266. As a result, Bob's did not enter into a joint-employer relationship with Masis as it had with B.J.'s.

It is undisputed that Bob's did not notify the Union about its staffing agreement with Masis, nor did it offer to bargain with the Union regarding the work that would be performed by Masis's workers. When the Union requested a list of all bargaining unit employees and information about any service agreements that Bob's had with other companies, Bob's never mentioned the Masis contract.

Masis employees worked at Bob's until October 15, 2016. Generally, between 18 and 24 Masis employees were engaged at Bob's each week during the period when Bob's subcontracted work to Masis. And the subcontracted work sometimes included overtime. Between November 2015 and October 2016, Masis furnished a total of 111 employees to perform the subcontracted work at Bob's. Only four of these employees worked exclusively on cutting and banding tires that

were shipped to India. One hundred and one Masis workers performed "general labor," clearly the sort of work routinely performed by bargaining unit employees at Bob's. Indeed, it is undisputed that the Masis employees did not perform any work that B.J.'s employees could not have done. J.A. 170.

In January 2016, Bob's unilaterally decided to pay some bargaining unit employees weekly bonuses for being "better workers." J.A. 97. The Union never received notice of the bonus payments and never had an opportunity to bargain over the matter. In September 2016, Bob's unilaterally terminated the bonus program, again without giving the Union an opportunity to bargain.

## C. The Board's Proceedings

In September 2016, the Union filed a charge with the Board, alleging that Bob's had engaged in unfair labor practices. A complaint was issued, and the case proceeded to a hearing before an ALJ. The ALJ found that Petitioner had violated the Act by (1) "failing to notify the [Union] in advance and offering it an opportunity to bargain about the subcontracting of unit work to Masis"; (2) "failing to pay unit employees a Christmas bonus in 2015 as it had in previous years"; and (3) "unilaterally initiating bonus or incentive payments to unit employees in January 2016 and then unilaterally terminating these payments in September 2016." *Bob's Tire Co., Inc.*, 368 N.L.R.B. No. 33, at 6 (July 31, 2019). Petitioner filed exceptions to the ALJ's rulings, findings, and conclusions. *Id.* at 1.

The Board adopted the ALJ's findings that Bob's had violated sections 8(a)(5) and (1) of the NLRA by failing to notify and bargain with the Union before subcontracting bargaining unit work from November 6, 2015, to October 15,

2016. *Id.* The Board rejected the ALJ's conclusion regarding the Christmas 2015 bonuses. *Id.* at 1-2. In the absence of exceptions, the Board adopted the ALJ's finding that Petitioner violated sections 8(a)(5) and (1) of the Act by unilaterally initiating and terminating a performance-based bonus program for unit employees. *Id.* at 1 & n.1. The Board ordered Petitioner to cease and desist from unfair labor practices, directed Petitioner to bargain on request with the Union before implementing any further changes in terms and conditions of employment, and required Petitioner to restore the performance-based bonus program pending collective bargaining with the Union. *Id.* at 2. Finally, the Board ordered Bob's to make bargaining unit employees whole for any loss of earnings and other benefits suffered as a result of Bob's subcontracting of bargaining unit work and cessation of performance-based bonuses. *Id.*

Bob's now petitions for review of the Board's order as to the subcontracting and 2016 bonus program. The Union does not contest the Board's decision rejecting the ALJ's conclusion regarding the Christmas 2015 bonuses.

## II. ANALYSIS

### A. Standard of Review

"We will uphold a decision of the Board unless it relied upon findings that are not supported by substantial evidence, failed to apply the proper legal standard, or departed from its precedent without providing a reasoned justification for doing so." *Int'l Longshore & Warehouse Union v. NLRB*, 890 F.3d 1100, 1107 (D.C. Cir. 2018) (quoting *E.I. Du Pont de Nemours & Co. v. NLRB*, 682 F.3d 65, 67 (D.C. Cir. 2012)). "[W]e may not displace the Board's choice between two fairly conflicting

views, even though we would justifiably have made a different choice had the matter been before us de novo." *Regal Cinemas, Inc. v. NLRB*, 317 F.3d 300, 306 (D.C. Cir. 2003) (alterations, internal quotation marks, and citation omitted).

The Board's construction of the NLRA, including its classification of "terms and conditions of employment" as mandatory subjects of bargaining, 29 U.S.C. § 158(d), is afforded "considerable deference" and upheld so long as it is "reasonably defensible." *Regal Cinemas*, 317 F.3d at 307 (quoting *Ford Motor Co. v. NLRB*, 441 U.S. 488, 495, 497 (1979)).

## B. Petitioner's Subcontracting of Unit Work

Substantial evidence supports the Board's conclusion that Bob's violated the NLRA by subcontracting bargaining unit work to Masis without notifying or bargaining with the Union. The record makes clear that Petitioner contracted with Masis to have Masis's employees perform work that otherwise would have been performed by employees in the bargaining unit.

The evidence shows that 101 of the 111 Masis employees used by Bob's performed "general labor," i.e., work of the sort routinely performed by unit employees. J.A. 276-80. Only four of the 111 Masis workers exclusively cut and strapped sidewalls and treads for tires sent to India. *Bob's Tire Co., Inc.*, 368 N.L.R.B. No. 33, at 5 (July 31, 2019). Indeed, Bob's President, Robert Bates, conceded that he was "sure [the B.J.'s employees] could have" performed the work performed by the Masis workers. J.A. 164-65; *see also* J.A. 170 (agreeing there was nothing Masis workers did "that one of the BJ's employees could not have done"). Bates also acknowledged that he could have directly hired employees to complete the work done by Masis workers. J.A. 166. Finally, Bates testified that the Masis

workers did not use any special skills and could be trained in about a day. *See* J.A 171. The record thus contains substantial evidence to support the Board's finding that the Masis workers completed "the same work" as the bargaining unit members "under similar conditions of employment." *See Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 215 (1964).

Petitioner argues that the subcontracting arrangement with Masis did not result in a violation of its duty to bargain because Bob's engagement in the India project and the resulting work requirements reflected "a change in the scope and direction of [its] enterprise." *See First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 677 (1981). This claim is belied by the record. Substantial evidence supports the ALJ's finding, adopted by the Board, that Bob's engagement in the India project did not represent a change in the scope and direction of the company. *Bob's Tire Co., Inc.*, 368 N.L.R.B. No. 33, at 5 (July 31, 2019). As noted above, only four Masis employees worked exclusively on cutting sidewalls and strapping treads for tires sent to India. *Id.* The record is clear that most Masis workers performed tasks of the sort that were routinely performed by bargaining unit employees.

## C. Applicability of the Duty to Bargain

Petitioner also argues that bargaining unit members suffered no adverse impact from the Masis subcontract, as if to suggest that, if true, this fact vitiates the duty to bargain. Petitioner's claim is mistaken. First, Board precedent makes clear that the duty to bargain over arrangements to subcontract bargaining unit work "is not limited to situations in which employees are laid off or replaced." *Acme Die Casting*, 315 N.L.R.B. 202, 202 n.1 (1994). As the First Circuit has explained, "[u]nion members have an interest in an employer's subcontracting decision in addition to the potential for layoffs.

This work provides bargaining unit members with the opportunity to obtain extra shifts (possibly at overtime rates) or to expand the size of the unit through the hiring of new employees." *Sociedad Española de Auxilio Mutuo y Beneficiencia de P.R. v. NLRB*, 414 F.3d 158, 167 (1st Cir. 2005).

Here, the ALJ concluded, and the Board agreed, that "[a] bargaining unit is adversely affected whenever bargaining unit work is given away to nonunit employees regardless of whether the work would have been done by employees already in the unit or by employees who would have been hired into the unit." *Bob's Tire Co., Inc.*, 368 N.L.R.B. No. 33, at 6 (July 31, 2019). In addition, the Board found in this case that there "appear[ed] to have been opportunities for increased overtime for unit employees that were adversely affected by the influx of Masis employees." *Id.*; *see also* J.A. 76 (employee Tomas Ventura) (testifying that his hours were modified during the time when Masis workers were hired); J.A. 165-66 (Bob's President Robert Bates) (conceding that Bob's could have hired additional unit employees, but chose to subcontract with Masis instead).

The simple point here, which is dispositive of the duty to bargain charge, is that Bob's failed to give notice to the Union or discuss any of the details regarding a subcontracting arrangement with an outside contractor to furnish workers to perform bargaining unit work. The Union obviously had an interest in understanding, discussing, and possibly objecting to the use of non-unit employees to perform bargaining unit work. Indeed, the Union might have claimed that the Masis employees should have been treated as part of the existing bargaining unit pursuant to the Board's accretion doctrine. *See Recology Hay Rd.*, 367 N.L.R.B. No. 32, at 2 (Feb. 27, 2019) (explaining that the Board finds an accretion "when the

additional employees have little or no separate group identity and thus cannot be considered to be a separate appropriate unit and when the additional employees share an overwhelming community of interest with the preexisting unit to which they are accreted" (quoting *Safeway Stores, Inc.*, 256 N.L.R.B. 918, 918 (1981))). In other words, the Union had good reasons to secure its bargaining rights under the NLRA, and there were issues amenable to bargaining. And there is no doubt that Bob's had a legal obligation to give notice to the Union and then bargain with the employees' agent before subcontracting their unit work.

Bob's unlawful failure to bargain is distinct from the question of whether employees in the bargaining unit are due any backpay under the Board's order. That remedy question can be properly raised during the Board's compliance proceedings. It is well understood that "compliance proceedings provide the appropriate forum where the Board and petitioners will be able to offer concrete evidence as to the amounts of backpay, if any," to which employees are entitled. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 902 (1984); *see also Chevron Mining, Inc. v. NLRB*, 684 F.3d 1318, 1330 (D.C. Cir. 2012). Whether or not back pay is due, however, in no way affects the efficacy of the Board's cease and desist order against Bob's for its unlawful refusal to bargain.

### D. Petitioner's Remaining Arguments

As an alternative argument, Petitioner contends that Bob's and Masis are joint employers, such that Masis workers should have been considered part of the bargaining unit. This is a specious claim. Petitioner concedes that the Board adopted the ALJ's finding that workers supplied by Masis were not Bob's employees. *See Bob's Tire Co., Inc.*, 368 N.L.R.B. No. 33, at 1 (July 31, 2019). Substantial evidence in the record supports this

finding. The November 2015 staffing agreement provided that Masis had the sole right to hire, discipline, fire, assign, and reassign workers. J.A. 264. Furthermore, Bob's did not include the Masis workers in a list of unit employees when the Union requested this information. *Bob's Tire Co., Inc.*, 368 N.L.R.B. No. 33, at 4-5 (July 31, 2019). And, tellingly, if Bob's was confused over whether Masis's employees should have been included in the bargaining unit, it could have filed a timely clarification petition with the Board. *See, e.g.*, *St. Francis Hosp., Inc.*, 282 N.L.R.B. 950, 951 (1987); *see also Dixie Elec. Membership Corp. v. NLRB*, 814 F.3d 752, 756-57 (5th Cir. 2016).

Finally, we are without jurisdiction to consider Petitioner's argument regarding the 2016 bonus program because Bob's failed to raise the matter with the Board before filing a petition for review with this court. The ALJ found that Bob's violated section 8(a)(5) and (1) of the Act by unilaterally implementing a performance-based employee bonus program in January 2016, then unilaterally discontinuing it in September 2016. *Bob's Tire Co., Inc.*, 368 N.L.R.B. No. 33, at 6 (July 31, 2019). Bob's never raised an exception to this finding with the Board. *Id.* at 1 n.1. In the absence of any exceptions, the Board adopted the ALJ's finding that Bob's violated the Act by unilaterally implementing and rescinding the performance-based bonuses. *Id.* at 1. There are no extraordinary circumstances justifying Bob's failure to pursue this issue with the Board. Therefore, we are without authority to consider the matter. *See Advancepierre Foods, Inc. v. NLRB*, 966 F.3d 813, 818 (D.C. Cir. 2020); *see also* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.").

14

## III. CONCLUSION

For the reasons set forth above, we deny the petition for review and grant the cross-motion for enforcement of the Board's order.

*So ordered.*