# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 22-1118**

**September Term, 2022**

FILED ON: APRIL 7, 2023

AMERINOX PROCESSING, INC.,
          PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
          RESPONDENT

---

Consolidated with 22-1158

---

On Petition for Review and Cross-Application
for Enforcement of an Order of the National Labor Relations Board

---

Before: MILLETT and WALKER, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

## J U D G M E N T

This case came before us on a petition for review and a cross-application for enforcement of an action by the National Labor Relations Board. We considered the appeal on the record before the NLRB and the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). After considering the issues, we have determined that a published opinion is unnecessary. *See* D.C. Cir. R. 36(d).

We **DENY** the petition for review and **GRANT** the cross-application for enforcement.

\*     \*     \*

On October 19, 2020, in the parking lot before work and during the morning break, two employees at Amerinox's metal-processing facility gave union-authorization cards to some of their colleagues. They hoped to convince the others to elect the International Association of Sheet Metal, Air, Rail, and Transportation Workers, Sheet Metal Workers Local 19 to represent Amerinox's workforce.

But by the end of the day Amerinox had fired the two organizers — Kyle George and Miguel Gonzalez — and laid off three of the employees who signed authorization cards: Joseph Soto, Keon Smith, and Andrew Rodriguez. Amerinox also laid off one employee who didn't sign an authorization card, Bernard Venable.

Suspecting foul play, the Union filed unfair-labor-practice charges against Amerinox with the National Labor Relations Board. An Administrative Law Judge concluded that Amerinox violated § 8(a) of the National Labor Relations Act by terminating and laying off employees who "formed, joined, or assisted the Union." JA 27; *see* 29 U.S.C. §§ 158(a)(1), (3).

The Board affirmed. To address Amerinox's violations, the Board ordered a number of remedies, including requiring Amerinox to notify its employees of their rights and to let the Union post on company bulletin boards.

Amerinox petitioned this court for review. It claims that the evidence does not show that it violated the Act, and that no statute authorizes the Board's remedies.

We disagree. The Board's decision was supported by substantial evidence, and its remedies were reasonable.

## I. Substantial Evidence Shows that Amerinox Violated the Act

Start with the Board's order. To decide whether Amerinox violated the National Labor Relations Act, the Board applied the *Wright Line* test. *See Wright Line, A Division of Wright Line, Inc.*, 251 NLRB 1083 (1980).

Under that test, the General Counsel for the Board — who prosecutes unfair-labor-practice cases — must first show that an "employee was engaged in [protected] activity," that the "employer was aware of that protected activity," and that "the protected activity was a motivating factor in the employer's decision to take adverse action." *Inova Health System v. NLRB*, 795 F.3d 68, 80 (D.C. Cir. 2015) (cleaned up). After that, "the burden of persuasion shifts to the employer to show that it would have taken the same action in the absence of the unlawful motive." *Id.* (cleaned up).

Here, the Board held that the General Counsel met her burden at step one — Amerinox terminated and laid off its employees because they had taken part in a union organizing campaign. At step two, the Board concluded that Amerinox failed to show that it would have terminated and laid off its employees regardless of their protected activity.

To survive our review, the Board's decisions must be supported by "substantial evidence." *E.I. Du Pont De Nemours & Co. v. NLRB*, 682 F.3d 65, 67 (D.C. Cir. 2012). Here, they are. To see why, consider each of Amerinox's adverse employment actions.

2

*George.* Just hours after George handed out union-authorization cards, an Amerinox manager escorted him off the property and told him not to come back. As he was leaving, the manager suggested George was being fired because he "was handing out union cards." JA 139. The Board reasonably inferred from that conversation that Amerinox fired George because he took part in the union organizing campaign.

Amerinox argues that its due process rights were infringed by the ALJ's slight misquote of the manager's statement to George. That argument fails because the error did not alter the substantive import of the statement, and so was harmless.

After the General Counsel made that showing, the burden shifted to Amerinox to prove "it would have taken the same action in the absence of George's statutorily protected activities." JA 24; *see Inova Health System*, 795 F.3d at 80. Trying to meet its burden, Amerinox claimed that it let George go because he "was involved in an incident several weeks earlier." JA 20.

But that excuse is undercut by the record. Earlier on the same day that George was discharged for distributing union cards, he gave Amerinox his two weeks' notice. When he did so, the company asked him to write a manual on how to operate a machine before he left — a task that was expected to take more than a day. It is implausible that George's prior incident caused Amerinox to change its mind and discharge him a few hours after it gave him the writing assignment. After all, Amerinox knew about the incident when it gave George his new task. We thus agree with the Board that Amerinox presented "no credible evidence" that it would have fired George even if he hadn't taken part in the union organizing campaign. JA 24. *See, e.g.*, *Southwire Co. v. NLRB*, 820 F.2d 453, 463 (D.C. Cir. 1987).

*Gonzalez.* Like George, Gonzalez helped distribute union-authorization cards before work. Later that day, Amerinox fired him too. The Board relied on three bits of evidence to connect those events. First, Amerinox's management knew about the organizing campaign. The ALJ's finding of company knowledge is well supported. Chuck Hahn, a member of Amerinox's plant management, and Matt Mintz, a family member of management, both knew about the union cards and immediately either went to management's offices or got on the phone after seeing the cards. Unchallenged Board precedent holds that knowledge can be imputed to the company if a supervisor is aware of union activity. *See, e.g.*, *State Plaza Inc.*, 347 N.L.R.B. 755, 756 (2006). Second, Amerinox's president demonstrated anti-union animus, including when he told Gonzalez that he would "destroy" anyone "talking about the Union" prior to the organizing campaign. JA 316. Third, Amerinox fired Gonzalez within an hour of terminating George for "handing out union cards." JA 139. *See Reno Hilton Resorts v. NLRB*, 196 F.3d 1275, 1283 (D.C. Cir. 1999) ("[T]iming is a telling consideration in determining whether employer action is motivated by anti-union animus."). That evidence is sufficient to support the Board's finding that Amerinox fired Gonzalez for his union activities. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

To show that it fired Gonzalez for a legitimate reason, Amerinox claimed he had a verbal altercation with a coworker. But Amerinox did not fire other employees who engaged in worse workplace misbehavior, including throwing a lock at a coworker and touching a coworker

3

inappropriately. That disparity supports the Board's conclusion that Amerinox's asserted reason was not credible. *See Constellium Rolled Products Ravenswood, LLC v. NLRB*, 45 F.4th 234, 240 (D.C. Cir. 2022); *Inova Health System*, 795 F.3d at 84-85.

*Soto, Smith, Rodriguez, and Venable*. The same day that it fired George and Gonzalez, Amerinox laid off four other employees: Soto, Smith, Rodriguez, and Venable. All but Venable had signed union-authorization cards. To find that the layoffs were motivated by the employees' involvement in the union organizing campaign, the Board again noted the timing of the layoffs and Amerinox's knowledge of the campaign. The Board also relied on the fact that Amerinox fired or laid off five of the eight people who signed union-authorization cards. In contrast, Amerinox laid off only one of the approximately twenty-six other employees who did not — Venable. The Board's reliance on that circumstantial evidence is reasonable and consistent with established Board precedent. *See David Saxe Productions*, 370 N.L.R.B. No. 103, slip op. at 33-34 (April 5, 2021); *Inova Health System*, 795 F.3d at 82.[1]

Pushing back, Amerinox claimed that the layoffs were a cost-cutting measure. But in the three months following the layoffs, Amerinox paid significant overtime to the remaining employees and then hired eleven new employees. *See Power, Inc. v. NLRB*, 40 F.3d 409, 418-419 (D.C. Cir. 1994). The layoffs were not a coordinated decision made by the firm; one executive was visibly shocked by the layoffs. And Max Young, part of Amerinox's management, had told Soto that he did not want to lay anyone off, supporting the notion that these layoffs were motivated by anti-union animus. *See Dillingham Marine & Manufacturing Co.*, 239 N.L.R.B. 904, 910 (1978). On appeal, Amerinox presents no compelling reason to disagree with the Board's conclusion that the alleged reason was pretextual.

## II. The National Labor Relations Act Authorizes the Board's Remedies

After the Board concluded that Amerinox had violated the Act, it ordered several remedies. Amerinox challenges two:

- An order requiring Amerinox to mail a notice to its employees with an explanation of their rights.

- An order requiring Amerinox to give the Union special access to its bulletin boards and to employee contact information.

---

[1] In its briefing, Amerinox protests that it could not have fired Venable for taking part in the union organizing campaign because he did not sign a union-authorization card. But it is a violation of the National Labor Relations Act to fire a neutral employee to cover up unlawful action against those involved in a union campaign. *Napleton 1050, Inc. v. NLRB*, 976 F.3d 30, 53 (D.C. Cir. 2020) (Rao, J., concurring in part and dissenting in part) ("The Board need not prove the employer's knowledge of union activity by the neutral employees because they were treated adversely as part of the employer's plan to discriminate against known union supporters."); *see also Contractors' Labor Pool, Inc. v. NLRB*, 323 F.3d 1051, 1057 (D.C. Cir. 2003). The Board reasonably concluded that is what happened here.

We must uphold the Board's remedies unless they demonstrate "a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the [National Labor Relations] Act." *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 216 (1964) (cleaned up).

The two remedies here fall within the Act's policy goals. The remedies notify employees of their statutory rights and help ensure that they can exercise those rights. *See Teamsters Local 115 v. NLRB*, 640 F.2d 392, 400-401 (D.C. Cir. 1981). In any case, Amerinox did not raise its property-rights objection to the bulletin boards remedy before the Board, so we are without jurisdiction to consider that claim. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board . . . shall be considered by the court," barring "extraordinary circumstances.").

The remedies are also reasonable given Amerinox's history. After a different tussle with Sheet Metal Workers Local 19, Amerinox entered an informal settlement with the Board in 2019. Amerinox's president then conveyed his unhappiness with the settlement terms to his employees. He complained about the "ridiculous things" he "had to agree to." JA 16. He also encouraged employees to be "part of the team," to not get "sucked into the nonsense," and to not "file a charge" with the Board. JA 17. Those statements, coupled with Amerinox's habit of flouting labor law, *see, e.g.*, JA 805-813, suggest that the Board acted appropriately in ordering remedies that ensure Amerinox employees know their rights. *See United Steelworkers of America v. NLRB*, 646 F.2d 616, 630 (D.C. Cir. 1981); *Fallbrook Hospital Corp. v. NLRB*, 785 F.3d 729, 736 (D.C. Cir. 2015).

For these reasons, we **DENY** the petition for review and **GRANT** the cross-application for enforcement.

\*     \*     \*

This disposition is unpublished. *See* D.C. Cir. R. 36(d). We direct the Clerk to withhold this mandate until seven days after resolution of a timely petition for panel or en banc rehearing. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk

5